THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID E. WILSON, Defendant-Appellant.

Fifth District No. 5—01—0980

Opinion filed October 15, 2003.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, and Nancy L. Vincent, of State Appellate Defender's Office, of Springfield, for appellant.

Stan Brandmeyer, State's Attorney, of Carlyle (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

In September 2001, a jury convicted the defendant, David E. "Chip" Wilson, of two counts of aggravated criminal sexual abuse (720 ILCS 5/12—16(f) (West 2000)). The charges stemmed from allegations that he had touched two female high school students in a sexual manner. At the trial, two additional young women testified about similar conduct by the defendant, for which he was not charged. On appeal, the defendant contends that the trial court erred in denying his motion to exclude this testimony. We affirm.

## I. BACKGROUND

From September 1999 to March 2001, the defendant was employed

at Central High School in Breese, Illinois. His primary duties were to supervise students who had been given in-school suspensions and to act as an assistant coach of the football team. When he had no students to supervise in the in-school suspension room, he often offered assistance to other teachers or visited the art classroom. The art classroom and the in-school suspension room were actually one room, separated only by cabinets and room dividers. James Falconio, the art teacher, was the head coach of the football team. Often, football players sat in the back of Falconio's classroom watching videos of football plays during their study hall periods. When the defendant visited the art room, he generally talked to these players. However, occasionally he walked around the room and chatted with the art students as well.

In January 2001, the school administration received a complaint from a female student alleging that, in December 2000, the defendant had initiated physical contact with her that was sexual in nature. The superintendent and the principal met with the defendant to discuss the student's allegations. In March 2001, the defendant was fired from his position after the administration received two additional complaints.

On March 25, 2001, the State charged the defendant by information with two counts of aggravated criminal sexual abuse (720 ILCS 5/12—16(f) (West 2000)). Count I alleged that he had knowingly touched Carol Z.'s breasts for the purpose of sexual gratification. Count II alleged that he had knowingly touched Crystal H.'s breasts for the purpose of sexual gratification. No other charges were filed.

On April 3, 2001, Sergeant Mike Kreke interviewed the defendant in his home. According to Sergeant Kreke's trial testimony, the defendant told him that he was a "touchy-feely" person who often greeted students by slapping them on the shoulder or putting his arm on their back, although Sergeant Kreke could not recall the defendant's exact words. The defendant also gave Sergeant Kreke a written statement, in which he stated: "It is not uncommon for me to put my hand on somebody's shoulder while talking to them. I will sometimes put my hand on their waist or back also. There is no sexual connotation. To me what I have done is not inappropriate conduct."

On September 11, 2001, the defendant filed a motion *in limine* to exclude the testimony of Lisa V.—who also had alleged sexual contact by the defendant—on the basis that her testimony would relate to uncharged conduct. On September 17, the State filed its written response to the defendant's motion. The State noted that the defendant was expected to contend that any physical contact was "of a non[ ]sexual and harmless nature," and the State argued that the testimony was relevant because it showed the defendant's intent and

*modus operandi*. On September 17, the defendant filed a motion *in limine* to exclude the testimony of both Lisa V. and Ashley A. (another student who had alleged sexual contact by the defendant). He objected to Ashley A.'s testimony both because it involved uncharged conduct and because the State had not disclosed her identity to the defendant until September 14, three days before the trial. On September 17, 2001, the trial court denied both motions, stating, "[In] cases such as this[,] *** the State is entitled to present this type of evidence in its case-in-chief."

The trial took place over two days, on September 17 and 18, 2001. Crystal H. testified that in March 2001, when she was a first-year high school student, she received an in-school suspension. The in-school suspension room was furnished with desks separated by room dividers to form cubicles. When Crystal H. sat at one of these desks, the defendant approached her from behind and put his hands around her waist. He then moved his hands up from her stomach to touch her breasts from underneath. She further testified that at other times, he approached her in art class and put his hands around her waist in a similar manner and touched her stomach; however, she stated that he only touched her breasts the one time.

Carol Z. testified that the defendant made physical contact with her approximately 15 times throughout the 2000-2001 school year. These incidents took place both in the art room and in the hallways. She stated that the defendant made contact with her in a variety of ways. On some occasions, he hugged her; on others, he held her hand or touched her lower back; sometimes he touched her eyes or her lips or brushed her hair out of her face. She testified that some of these times he approached her from behind but that at other times he approached her from the front. She alleged that he had touched both her breasts and her buttocks. She stated that the defendant was always "subtle," touching her in such a way that others would not be able to see that he was doing anything more than hugging her. Carol Z. further testified that the defendant often chatted with the students in Falconio's art class. She stated that on one occasion, he asked her about her sex life, which made her feel uncomfortable. She further testified that she witnessed the defendant hugging other female students but could not see whether he was doing anything more than hugging them.

Lisa V. testified to three incidents of sexual contact with the defendant. All three incidents took place in November and December 2000. The first time, Lisa V. was seated at a desk in her study hall. According to her testimony, the defendant approached her from behind, grabbed her sides, and then put his fingers under her breasts so that

the sides of his index fingers touched her breasts. The second time was also in study hall. Lisa V. testified that the defendant did the same thing he had done the first time. He then sat across from her at a table to talk to her and two other girls who were sitting at the same table. She testified that he winked at her and took her daily planner and drew a picture of a little devil in it and wrote next to the picture, "Lisa is a horny devil."

The third incident occurred when Lisa V. was taking a makeup test for her chemistry teacher. She testified that she went into the driver's education classroom, which was apparently not being used at the time, to wait for her chemistry teacher to bring her the test. The defendant followed her into the room. The chemistry teacher came in after the defendant and asked the defendant if he was going to act as a proctor and watch to make sure Lisa V. did not cheat on her test. She testified that, as she took the test, the defendant twice approached her from behind, squeezed her shoulders, and rubbed her breasts and her shoulders. He then approached her from the left side, put his right hand on her back, and rubbed his crotch against her arm. She stated that "there was an obvious bulge in his pants" when he did this.

Ashley A. testified to two incidents that had occurred toward the end of the 1999-2000 school year. She had obtained permission to go to the art room when no art class was in session, because she "didn't have anything to do" and she "just wanted to draw." She testified that she was sitting on a stool, drawing, when the defendant came up behind her, brushed his hand against her back, which she "didn't think was a big deal," and then stood very close to her and "rubbed his genital area on [her] leg." The second incident took place in the hall. Ashley A. was showing a group of friends a tattoo she had just gotten on her shoulder. She wore a shirt over a tank top and had pulled the shirt back so as to expose the tattoo. The defendant approached the group, and she showed him the tattoo also. She stated that he then rubbed against her breast. At the time, she thought he did it accidentally, but in retrospect, she believed that it was intentional.

The defendant took the stand in his own defense. When asked if he had any physical contact with Crystal H. in the in-school suspension room, he stated, "I walked over and maybe put my hand on her arm and asked her if she had anything to do." He testified that he could not have touched her in the way she described because the type of chair in which she was sitting would have made it impossible. When he was asked to demonstrate, the following exchange took place:

"Q. [Defense counsel:] Okay. And could you[—]can you try to put your hands higher up?

A. If I was[—]only if I was standing above."

A photograph of the desks and chairs in the in-school suspension room was admitted into evidence. The photograph reveals that the chair had a solid back, the height of which was approximately level with the height of the desk. The chair did not have arms and was not attached to the desk. When asked if he had any additional physical contact with Crystal H. in the art room, the defendant responded, "The only[—]what we discussed before [the incident in the in-school suspension room] is the only time that I really had any contact with her."

The defendant testified that it would not have been possible for him to approach Lisa V. from behind while she was taking a makeup test in the driver's education classroom. He testified that she was seated in the first row of seats. The desks had chairs attached to them and were arranged so that the front of each desk was nearly touching the chair of the desk in front of it. Because of this, he stated, he would have had to move the desk behind her entirely out of the way in order to stand behind her. Although the defendant denied any physical contact with Lisa V. during her makeup exam, when he was asked on cross-examination if he had ever had contact with her during her study hall, he stated, "If I ever did anything to her was [sic] just put my hand around her shoulder."

When asked if he had any physical contact with Carol Z., the defendant stated, "None that I can recall." He testified that on one occasion she began talking to him about her dating relationship and that he quickly changed the subject. When asked if he had any physical contact with Ashley A., he replied, "None that I am aware of." He further testified that he did not recall ever being alone with Ashley A.

On October 16, 2001, the defendant filed a motion for a judgment notwithstanding the verdict or, alternatively, for a new trial. He raised the same objections to Lisa V.'s testimony and Ashley A.'s testimony that he had raised in his motions *in limine*. The trial court denied the motion and, on November 28, 2001, sentenced the defendant to concurrent sentences of 180 days in the Clinton County jail and 30 months of probation. This appeal followed.

## II. ANALYSIS

■ Ordinarily, evidence of prior criminal conduct or prior bad acts is inadmissible if it is only relevant to show a defendant's propensity to commit the crime charged. *People v. McKibbins*, 96 Ill. 2d 176, 182, 449 N.E.2d 821, 823 (1983). However, if it is relevant for any other purpose, such as to show a defendant's *modus operandi* or to show intent, it is admissible. *McKibbins*, 96 Ill. 2d at 182, 449 N.E.2d at 824. We will not reverse the trial court's ruling on the admissibility of

such evidence absent a clear showing that the trial court abused its discretion. *People v. Thingvold*, 145 Ill. 2d 441, 452-53, 584 N.E.2d 89, 93-94 (1991). The defendant contends that the trial court abused its discretion by admitting the testimony of Lisa V. and Ashley A. He argues that their testimony served only to prove that he had the propensity to sexually molest female students. He contends that his intent was not at issue in the trial and that the testimony did not show a *modus operandi*. As a result, he concludes, it did not fit within either exception the State contends was applicable. We disagree.

■ *Modus operandi* literally means "method of working." The term refers to "a pattern of criminal behavior so distinct that separate crimes or wrongful conduct are recognized as the work of the same person." *People v. Kimbrough*, 138 Ill. App. 3d 481, 486, 485 N.E.2d 1292, 1297 (1985). The connection between the uncharged conduct and the crime charged must be clear enough to create "a logical inference that if defendant committed one of the acts, he may have committed the other act." *Kimbrough*, 138 Ill. App. 3d at 486, 485 N.E.2d at 1297.

■ First, the defendant argues that, because his identity was not at issue, *modus operandi* evidence was improper. We disagree. Often, evidence of uncharged conduct is used to help establish the fact that the defendant was indeed the perpetrator. However, *modus operandi* evidence can be relevant even where the defendant's identity is not an issue. For example, *modus operandi* evidence is admissible to prove that a crime occurred at all. *Kimbrough*, 138 Ill. App. 3d at 487, 485 N.E.2d at 1298. Illinois courts have also found such evidence to be relevant where a defendant charged with sexual abuse presents "an innocent construction" to his conduct. *People v. Novak*, 163 Ill. 2d 93, 116-17, 643 N.E.2d 762, 774 (1994); see *People v. Soler*, 228 Ill. App. 3d 183, 203, 592 N.E.2d 517, 531 (1992) (*modus operandi* evidence was admissible where a stepfather contended that he was merely being physically affectionate with his stepdaughter in a nonsexual way); *Kimbrough*, 138 Ill. App. 3d at 486, 485 N.E.2d at 1297 (evidence of *modus operandi* was admissible where the defendant claimed that the encounter was consensual).

In the instant case, the defendant presented an innocent construction to his conduct. Although he denied engaging in all the precise conduct the girls alleged, he did not deny that he engaged in physical contact with students. Rather, he stated that such contact was nonsexual in nature. The defendant contends that he merely argued at the trial that the girls were lying and that his assertions that any "incidental touching" was nonsexual did not amount to an assertion that any incidental touching of the girls' breasts was accidental. He

states in his brief, "[I]t is at best an overbroad interpretation of the record to assert that the defense was that Mr. Wilson had no prurient motive in accidentally touching breasts." We find this contention unpersuasive.

First, we note that the defendant's intent was at issue at the trial. The defendant testified that he believed that Lisa V. "misunderstood" his actions toward her. Defense counsel argued in closing that even if the jury found the evidence that the defendant had engaged in any physical contact with the girls credible, the State was also required to prove that he did so with sexual intent. The statute does not require the State to prove that the defendant touched the students' breasts. It merely requires the State to prove that the defendant engaged in "an act of sexual conduct with a victim" between the ages of 13 and 17, where the defendant "held a position of trust, authority[,] or supervision in relation to the victim." 720 ILCS 5/12—16(f) (West 2000). Thus, although it is certainly harder to refute the undeniably sexual nature of touching their breasts, it was possible for the jury to find sexual conduct in the other types of touching that he admitted occurred, even if it believed that he did not intentionally touch any of the students' breasts or recall doing so accidentally. Moreover, the defendant's testimony shows that he did refer to the touching of the girls' breasts when he used the phrase "incidental touching." On cross-examination, the prosecutor asked the defendant about his January 2001 meeting with the principal and the superintendent regarding the initial student complaint against him. The following exchange took place:

"Q. Did he tell you the specifics of the complaints?

A. No, he didn't.

Q. He didn't tell you that girls were saying that you were touching their breasts, for example?

A. He didn't say [']touching their breasts['].

Q. What did he say, anything close to that?

A. Said that there might have been some incidental contact of some sort.

Q. Mr. Groff stated that there might be [sic] some incidental contact?

A. Said[:] [']Y]ou may have touched somebody[']s breasts[.] [D]id you?['] is what he asked me[,] and I said that I hadn't."

The defendant's intent in touching the girls *at all* was at issue; therefore, the testimony of Ashley A. and Lisa V. was very relevant to showing that he did have a sexual intent in his conduct.

The defendant contends, correctly, that *modus operandi* evidence is not admissible if it is relevant *only* to bolster the credibility of the

State's witnesses. *Kimbrough*, 138 Ill. App. 3d at 488, 485 N.E.2d at 1298. He points out that in its response to his motion *in limine*, the State argued that the evidence was admissible even if the defendant's intent was not at issue (see *People v. Pitts*, 299 Ill. App. 3d 469, 475-76, 701 N.E.2d 198, 203 (1998)) and that, in closing arguments, the State argued that four witnesses could not tell the same lie. First, we reiterate that although the State did contend that it could use the *modus operandi* evidence even if intent was not at issue, it also argued, correctly so, that the defendant's intent *was* at issue. Evidence of *modus operandi* that is otherwise properly admissible is not rendered inadmissible merely because it also bolsters the credibility of the State's witnesses. *Kimbrough*, 138 Ill. App. 3d at 488, 485 N.E.2d at 1298.

Finally, the defendant contends that the testimony of the four girls does not establish a pattern of behavior so distinctive that it forms a *modus operandi*. To demonstrate such a pattern, the crimes must share some distinctive features that are not common to most offenses of the same type. These similarities need not be unique, however. *People v. Barbour*, 106 Ill. App. 3d 993, 1000, 436 N.E.2d 667, 672 (1982). The crimes need not be identical. *Kimbrough*, 138 Ill. App. 3d at 487, 485 N.E.2d at 1297. We find that the conduct described by the four witnesses is sufficiently similar to constitute a *modus operandi*.

In contending otherwise, the defendant cites to our prior decision in *People v. Bobo*, 278 Ill. App. 3d 130, 662 N.E.2d 623 (1996), which he contends is precisely analogous to the case at bar. We find *Bobo* distinguishable.

There, a high school student alleged that a health education teacher hugged her in his office and that, while doing so, he touched her on the buttocks and breast and tried to kiss her. *Bobo*, 278 Ill. App. 3d at 131, 662 N.E.2d at 624. When she told him to stop, he told her that she knew where to find him if she changed her mind. *Bobo*, 278 Ill. App. 3d at 131, 662 N.E.2d at 624-25. The Illinois Department of Children and Family Services (DCFS) conducted an investigation into the matter, during which several other students made allegations that the teacher had sexually abused them. The DCFS investigator testified to these allegations at the trial. *Bobo*, 278 Ill. App. 3d at 132, 662 N.E.2d at 625. The opinion did not describe the nature of the allegations of uncharged conduct but noted that much of it "lacked any similarity to the incident" that formed the basis of the charges against Bobo. *Bobo*, 278 Ill. App. 3d at 133, 662 N.E.2d at 625. "Particularly noteworthy were alleged instances of defendant grabbing a student's breast while walking down a hall or defendant allegedly rubbing a

student's thigh while taping her ankle." *Bobo*, 278 Ill. App. 3d at 133, 662 N.E.2d at 625. We found that these instances shared no common features other than that they involved the defendant fondling students. *Bobo*, 278 Ill. App. 3d at 133, 662 N.E.2d at 625.

The differences among the three incidents mentioned in the opinion are readily apparent. The incident alleged by the complaining witness took place in the privacy of the defendant's office, where he not only made physical contact with her but also propositioned her. Another incident involved initially innocuous physical contact—taping a student's ankle—that escalated into inappropriate conduct. Yet another incident involved the teacher grabbing a young woman's breast as he passed her in the hallway. Still other allegations involved the defendant speaking inappropriately to students. *Bobo*, 278 Ill. App. 3d at 132-33, 662 N.E.2d at 625. In the instant case, by contrast, all the allegations of physical contact involved inherently sexual contact hidden within seemingly innocuous contact, such as hugging a student or putting a hand on a student's shoulder.

Although the instant case is factually similar to *Bobo* in that it involves allegations of the sexual abuse of female high school students by a teacher, we believe that the similarities end there. We find the facts with which we are presented far more analogous to those before the First District Appellate Court in *Soler* than to those this court faced in *Bobo*.

There, the defendant was the stepfather of the 14-year-old victim, K.M. *Soler*, 228 Ill. App. 3d at 185, 592 N.E.2d at 519. Before the defendant came into their lives, K.M. and her family had a practice of massaging each other's arms, legs, torsos, backs, faces, and shoulders, which they referred to as "nicing." *Soler*, 228 Ill. App. 3d at 185-86, 592 N.E.2d at 520. The first incident of abuse occurred when K.M. and the defendant were alone in the family room. The defendant told K.M. that he was going to "nice" her and began just rubbing her arm and stomach through her shirt, but then he moved his hands under her shirt and rubbed her bare chest. *Soler*, 228 Ill. App. 3d at 186, 592 N.E.2d at 520. K.M. testified that the defendant engaged in substantially similar conduct on other occasions, often when her sister and brother were asleep in the same bedroom with her. On one such occasion, he also rubbed her genital area underneath her pajamas. *Soler*, 228 Ill. App. 3d at 186, 592 N.E.2d at 520. On another occasion, he put his mouth on her breasts during a family vacation. *Soler*, 228 Ill. App. 3d at 187, 592 N.E.2d at 520.

Although the defendant was charged only for his sexual abuse of K.M., her eight-year-old sister, M.M., testified at the trial that she, too, had been abused. Specifically, M.M. testified that she had asked the

defendant to "nice" her. He complied, initially rubbing her arms through her sleeves, but then he put his hands through the armholes of her shirt to rub her bare chest. *Soler*, 228 Ill. App. 3d at 191, 592 N.E.2d at 523. She also testified that he "niced" her stomach and moved his hand to touch the bare skin just above her genital area. *Soler*, 228 Ill. App. 3d at 191, 592 N.E.2d at 523.

In concluding that the trial court had properly admitted M.M.'s testimony, the appellate court stated: "M.M. described conduct by defendant which was virtually identical to the incidents of abuse described by complainant. This testimony established that defendant had a common scheme or design to use 'nicing' as a pretext to sexually abuse his stepdaughters." *Soler*, 228 Ill. App. 3d at 203, 592 N.E.2d at 531. Although the court did not analyze the similarities and differences in the incidents of abuse to which both girls had testified, we note that there were differences in the incidents just as there are in the case at bar. M.M. asked to be "niced," while K.M. did not; some incidents occurred while the defendant was alone with one of the girls, while others occurred in the presence of other siblings. The defendant placed his mouth on K.M.'s breasts but did not do this to M.M. We find it significant, however, that the court specifically found that the *modus operandi* demonstrated by the evidence was the defendant's pattern of using seemingly innocuous affection as a pretext for inappropriate sexual contact.

 We think the testimony of the four young women who testified against the defendant in the instant case establishes a similar *modus operandi*. All four girls alleged that the defendant touched their breasts, but only Carol Z. alleged that he also touched her buttocks, and only Lisa V. and Ashley A. alleged that he also rubbed his genital area against their bodies. Some of the incidents to which the girls testified took place when they were in a room alone with the defendant, while other incidents took place in view of other students, with the defendant hiding his illicit touching within seemingly innocuous contact. On different occasions, the defendant approached the girls from the front, from behind, or from the side. However, all the alleged incidents share the common thread that the defendant engaged in seemingly innocuous conduct and stealthily proceeded to engage in sexual contact.

As in *Soler*, this common thread was directly relevant to overcoming a defense that the defendant had no sexual intent in his actions. There, as here, the defendant contended that any contact he had with the witnesses was nonsexual in nature. *Soler*, 228 Ill. App. 3d at 195, 592 N.E.2d at 526. Although the defendant in the case at bar draws a distinction between such a contention and his contention that he did

not touch the girls' breasts, we think implicit in Soler's defense that he only innocently touched his stepdaughters is the argument that he did not touch their breasts or genital areas but only innocuously massaged the girls. In other words, the defendant in *Soler* argued that he did not touch his stepdaughters in the manner they alleged. That is what the defendant contends in this case.

Because the pattern of behavior established through the *modus operandi* testimony helps to explain the defendant's method of seeking sexual gratification through outwardly innocuous contact, it logically creates the inference that he intended his conduct to be sexual. We find, therefore, that these similarities far outweigh the rather superficial differences cited by the defendant.

In sum, we conclude that the defendant's intent was at issue in the instant case and that the incidents of abuse to which all four girls testified were substantially similar enough to establish a *modus operandi* that helped to prove the requisite sexual intent. Thus, we hold that the trial court properly admitted the testimony of Ashley A. and Lisa V.

## III. CONCLUSION

For the foregoing reasons, we affirm the defendant's convictions.

Affirmed.

DONOVAN, J., concurs.

JUSTICE KUEHN, dissenting:

Today's decision marks a significant departure from our traditionally guarded view of other-crimes evidence, a view which requires that it be admitted only where it is relevant to some issue other than a person's penchant for committing crimes. Here, evidence of uncharged misconduct was admitted under the guise that it proved something other than the defendant's propensity for wrongdoing, when, in fact, it did not. *People v. Bobo*, 278 Ill. App. 3d 130, 662 N.E.2d 623 (1996), should control the outcome of this case.

In *People v. Bobo*, we confronted circumstances identical to those we deal with here. We awarded a new trial to a teacher charged with aggravated criminal sexual abuse, because evidence of uncharged fondling of students was admitted under a pretext of proving intent rather than criminal propensity. Bobo denied touching his accusers. Ergo, either he fondled young breasts and buttocks for lustful reasons or he did not. There was no evidence to raise a question about a nonsexual purpose in touching erogenous areas of the young school-

girls' bodies. Therefore, we held that the State was prohibited from presenting evidence of uncharged student touching to address the question of intent.

Now we refuse a plea that asks us to follow our precedent—a plea for equal treatment under the law. We not only turn our back to the defendant, but we shun our own decisionmaking as well. Moreover, we do so without any reason to support such a dramatic shift in position.

There was no justification, whatsoever, for the admission of testimony about sexual contact with Lisa V. or Ashley A. Such testimony was admitted solely for the purpose of demonstrating the defendant's penchant for fondling teenage girls. There was nothing distinctive or peculiar about the methods that he employed. The evidence simply shows the defendant to be a common, run-of-the-mill pervert, who mistakenly thought that rubbing genitals against young legs or placing a hand on a young breast would be either accepted or forgiven without complaint.

The majority talks about the use of other-crimes evidence to establish a *modus operandi*. Indeed, we are told that the superior quality of the *modus operandi* evidence admitted here allows us to distinguish our case from *People v. Bobo* and to maintain allegiance to that precedent. Here is the reasoning that led to that decision:

> "[T]he State introduced evidence of other wrongful acts, allegedly committed by defendant against several other female students, to show intent and/or motive and/or knowledge. The State, however, did not establish how such evidence showed motive, intent, or knowledge. Defendant denied that the entire incident with L.G. ever occurred; he did not claim he accidentally touched her, nor did he give some other type of excuse. The evidence offered by the State *** served only to demonstrate defendant's alleged propensity to sexually assault or harass female students." *Bobo*, 278 Ill. App. 3d at 132-33, 662 N.E.2d at 625.

The use of other-crimes evidence to establish a distinctive and peculiar *modus operandi* was not even under consideration in *People v. Bobo*. The holding had nothing to do with it. How strange it seems to distinguish a case for reasons that do not pertain to it.

My colleagues say: "[*M*]*odus operandi* evidence can be relevant even where the defendant's identity is not an issue. For example, *modus operandi* evidence is admissible to prove that a crime occurred at all. *Kimbrough*, 138 Ill. App. 3d at 487, 485 N.E.2d at 1298." 343 Ill. App. 3d at 748. This passage demonstrates how far off base the majority has strayed in seeking to uphold these convictions. It is simply not true. No case stands for such a proposition.

*Modus operandi* is not evidence; it is not used to prove anything. It is a criminal's unique methodology that the State is permitted to prove, with evidence of other crimes, when the question of who committed a crime is at issue.

*People v. Kimbrough* does not hold that *"modus operandi* evidence is admissible to prove that a crime occurred at all." Here is the passage of that opinion that the majority thinks stands for such a proposition:

> "[W]e believe that the crime charged and the subsequent [wrongful] act share peculiar and distinctive common features so as to earmark both acts as the handiwork of the same person. The two acts taken together demonstrate a 'method of working.' It follows that the subsequent act was admissible to prove *modus operandi and* that the crime charged was actually committed. Evidence of other crimes [not *modus operandi* evidence] may be relevant *not only to the issue of who committed a crime*[ ] but also to the issue of whether a crime was committed at all. [Citation.] This principle is applicable to a case like the present one, where defendant contends that as between himself and the victim, 'the question was did they meet by mutual consent or only by threat of force.' " (Emphasis added.) *Kimbrough*, 138 Ill. App. 3d at 487, 485 N.E.2d at 1297-98.

The *modus operandi* exception to the general rule that prohibits the admission of other uncharged wrongdoing addresses those situations where multiple crimes are so unique that they could only have been committed by one person. The exception makes sense only in the context of cases where the offender's identity is at issue. That is not what we have here.

The identity of who fondled the alleged victims was not at issue in this case. There was simply no question about who the victims claimed fondled them.

Justice Stamos, in another case that the majority misuses, put it well:

> *"Modus operandi* \*\*\* refers to a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer. [Citation.] \*\*\*
> \*\*\* While a showing of *modus operandi* does not require that the similarities be unique to the offenses being compared, there must be *'some distinctive features that are not common to most offenses of that type.'* [Citation.]" (Emphasis added.) *People v. Barbour*, 106 Ill. App. 3d 993, 999-1000, 436 N.E.2d 667, 672 (1982).

The majority does not appear to understand this, particularly in light of its reliance on *People v. Soler*, a case that deals with the common-scheme-and-design exception to the general prohibition against other-crimes evidence, not the *modus operandi* exception. See

*People v. Soler*, 228 Ill. App. 3d 183, 202-03, 592 N.E.2d 517, 530-31 (1992).

Here is an example of what the above passage means. Most gas station armed robberies involve the use of a pistol to relieve an attendant of all the money in the cash register. Evidence of a series of gas station robberies committed by a masked man who, while armed with a pistol, forces attendants to empty their cash registers would not qualify for admission in order to show *modus operandi*, even though every armed robbery was committed in identical fashion. There would be no distinctive features to the methodology uncommon to most gas station holdups. However, if this same armed robber repeatedly demanded all of the Fritos that the station had on hand, instead of its cash, the robberies would take on a distinctive feature to suggest that they were the work of the same individual. Authorities would know that they were dealing with the Frito Bandito, and upon his arrest, the prosecution would be armed with all the robberies to prove his identity in the crime charged.

The other-crimes evidence in this case did not even share common characteristics, much less distinctive features uncommon to most fondling cases. Lisa V. and Ashley A. testified to misconduct that was different from the alleged criminal conduct being prosecuted. Both charges alleged the fondling of breasts. Crystal H., a first-year student, testified that the defendant approached her from behind, put his hands on her waist, and moved them toward her chest until he touched her breasts. Carol Z., the other alleged victim, testified to a host of incidents that took place in the art room and in the hallways of the school. She told the jury that on occasion the defendant hugged her. On other occasions, he held her hand and touched her back. He approached her from behind and from the front. At times, he touched her breasts, and at times, he touched her buttocks. He even asked her about her sex life. Neither of the two victims testified that the defendant rubbed his genitals on her arm or leg.

Lisa V. and Ashley A. both testified to purposeful contact between the defendant's clothed penis and their arm and leg. In addition, the two schoolgirls testified about other kinds of inappropriate dalliance. The jury learned how the defendant was on hand to gape at Ashley A.'s provocative tattoo. It was also told how the defendant drew a picture of the devil on Lisa V.'s daily planner and labeled it "Lisa is a horny devil."

Jurors could not take kindly to an adult teacher who toyed around with his clothed penis and looked upon youngsters as horny devils. This unseemly flirtation and misuse of a housed penis was uncharged conduct that should never have been heard by jurors.

The only commonality between the charged conduct and the uncharged conduct was the touching of breasts, something that garden-variety child abusers do. This was not a case where proof of other uncharged misconduct could establish an uncommon *modus operandi* that set the defendant's fondling of teenagers apart from fondling engaged in by other child abusers. The testimony should never have been admitted on that basis.

This decision completely changes how we approach the admission of other-crimes evidence. In *People v. Bobo*, we addressed the same crime of aggravated criminal sexual abuse. Bobo was alleged to have fondled young students in order to sexually arouse either the students or himself or both. He flatly denied touching anyone. Since Bobo never claimed an innocent reason for touching a student, we held that the State could not introduce the other uncharged misconduct to prove the specific-intent element of the aggravated-criminal-sexual-abuse charge. Our ruling was consistent with precedent.

Until today, we have constrained the use of other-crimes evidence to those situations where defendants pursue a defense that challenges the intent element of the State's proof. We have never recognized the State's right to use other-crimes evidence to establish the element of intent in the absence of affirmative action on the part of a defendant that attempts to negate a prurient purpose. A flat denial of any physical contact has rendered other-crimes evidence immaterial and inadmissible to establish the specific-intent element of the State's proof on an aggravated-criminal-sexual-abuse charge.

In response to the defendant's claim that he never touched a student's breast, accidently or otherwise, the majority offers this stunning sentence:

> "The defendant's intent in touching the girls *at all* was at issue; therefore, the testimony of Ashley A. and Lisa V. was very relevant to showing that he did have a sexual intent in his conduct." (Emphasis in original.) 343 Ill. App. 3d at 749.

I think the majority is saying that since the defendant denied any inappropriate touching *at all*, the uncharged events became relevant to prove his sexual intent. If so, the majority is wrong.

When the defendant denied touching the girls *at all*, the testimony about other touching became relevant to whether he touched schoolgirls on their breasts, by showing his penchant for fondling. While it may have also been relevant to show why he touched breasts, it was totally unnecessary to prove a sexual purpose. Sexual intent was still a part of the charge that needed to be proven, but it became inherent in the denial. If the defendant did not touch schoolgirls on their private parts, he did not touch them and, therefore, did nothing

that could be driven by a sexual intent. It seems somewhat inane to think it important to prove other uncharged touching to establish sexual intent, when a sexual motivation was an obvious, foregone conclusion if the jurors disbelieved the defendant. The defendant's unwillingness to concede even the possibility that he may have accidently touched a schoolgirl on a sexually taboo area took the question of intent out of play.

The testimony of Ashley A. and Lisa V. helped resolve the question of whether the defendant touched the victims' breasts. It made the charged allegations more likely because it showed that the defendant had a propensity for fondling teenage schoolgirls. Of course, this is precisely what the law forbids.

This case is a green light to admit other-crimes evidence in every case where some specific intent is an element of the offense charged. Any prosecutor worth salt will have the above sentence scribbled across his or her case file and present it as his or her license to introduce other-crimes evidence, even though a defendant denies the alleged acts without a challenge to the intent element of the offense. Prosecutors will say what the majority is unwilling to say, because it has no reason to say it—*People v. Wilson* overrules *People v. Bobo*.

Despite the elimination of any need for an affirmative defense challenge as a prelude to the admission of other-crimes evidence on the question of intent, the majority discusses the defendant's purported effort to interject incidental touching as an innocent explanation for the accusations leveled against him. Again, the majority is wrong.

This defendant did not claim that he had accidentally touched anyone's breast. He merely claimed to have put his hand on Crystal H.'s arm. He unconditionally denied touching her breasts and protested that it could not have occurred as she claimed. The defendant testified that he did not recall *any* physical contact with Carol Z.

The majority thinks that the defendant conceded a breast-touching when, on cross-examination, he used the phrase "incidental touching." To the contrary, the defendant did not lay claim to an incidental touching of anyone. All that he testified to was his superior's suggestion that he might have had some incidental contact with a student's breasts. The prosecutor asked, "Mr. Groff stated that there might be [*sic*] some incidental contact?" The defendant answered, "Said[:] [']['][Y]ou may have touched somebody[']s breasts[.] [D]id you?['] is what he asked me[,] *and I said that I hadn't.*" (Emphasis added.)

The majority is wrong in implying that the defendant tried to put an innocent spin on touching students. The defendant denied breast-

touching and claimed that he had not succumbed to the suggestion that he may have innocently touched one. Thus, the testimony from Ashley A. and Lisa V. was not needed to refute a claim that the touching of a breast was accidental and without sexual intent.

We can cast aside our prior decisions if we choose, but not without a good reason. Before we overrule ourselves, the consistency that the law deserves, and upon which people rely, calls for an explanation. *People v. Bobo* is virtually indistinguishable from this case. Since the majority's effort to distinguish it examines a distinction without reason and since nothing is offered that would warrant overruling our precedent, I would allow this defendant the same relief granted to Mr. Bobo. I would grant the defendant a new trial where he is tried for charged misconduct, rather than having labeled a young schoolgirl a horny little devil.

For the reasons stated, I respectfully dissent.