Docket No. 97354–Agenda 12–September 2004.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DAVID E. WILSON, Appellant.

Opinion filed January 21, 2005.

JUSTICE THOMAS delivered the opinion of the court:

A jury convicted defendant, David E. Wilson, of two counts of aggravated criminal sexual abuse (720 ILCS 5/12–16(f) (West 2000)). Defendant appealed, arguing that the circuit court of Clinton County had erred in allowing the State to introduce other-crimes evidence from two witnesses whose testimony about defendant’s conduct toward them was similar to the circumstances surrounding the two charged offenses, but where defendant denied any sexual touching of the alleged victims. The appellate court affirmed defendant’s convictions, with one justice dissenting. 343 Ill. App. 3d 742. We allowed defendant’s petition for leave to appeal. 177 Ill. 2d R. 315.

BACKGROUND

At the time of the alleged offenses, defendant was employed by Central High School in Breese, Illinois. His primary duties were to supervise students during in-school suspensions and to act as an assistant football coach. The two alleged victims were students at the high school. Count I of the information filed against defendant charged that he knowingly touched Carol Z.’s breasts for the purpose of sexual gratification, and count II charged that he knowingly touched Crystal H.’s breasts for the purpose of sexual gratification. Prior to trial, defendant filed a motion 
in limine
 to exclude testimony from Lisa V. and Ashley A., two other female high school students who had come forward to claim that defendant had sexually abused them in ways similar to the charged offenses. Defendant alleged that both students’ testimony would involve uncharged conduct and that the State had not disclosed Ashley A.’s identity to defendant until three days prior to the scheduled trial date. The trial court denied defendant’s motion, and the case proceeded to trial.

During defendant’s opening statement, defense counsel told the jury that witnesses against the defendant would complain about conduct of defendant that occurred mostly in a third-period art class. He further stated that to show that the alleged touching did not happen, he would present the testimony of a teacher and several students of that class who would testify that they had not observed any physical contact between defendant and the two alleged victims. Defense counsel then acknowledged that there would be some evidence presented that would show that defendant touched people. He then told the jury that “that’s the type of person [defendant] is, that he will occasionally shake people’s hands, that he pats them on the back.” Defense counsel concluded his opening remarks by telling the jury “that if there was ever any type of contact whatsoever between my client and any of these people who are going to make complaints against him here that it was simply incidental contact and it had absolutely no sexual nature whatsoever.”

Crystal H. testified that in March 2001, when she was a 14-year-old high school freshman, she received an in-school suspension. The in-school suspension room was furnished with desks separated by room dividers to form cubicles. Crystal was seated at one of these desks serving a suspension when defendant approached her from behind and placed his hands around her waist. He then moved his hands up from under her stomach to touch her breasts from underneath. As he touched her breasts, he whispered into her ear, asking her what she was doing there. At the time, there was only one other person in the room–a student in another cubicle. She noted that defendant had touched her on other occasions, but this was the only time he touched her breasts.

Crystal further testified that after the incident in the in-school suspension room, defendant touched her on at least 10 other occasions during art class. On those occasions, defendant came up from behind her and placed his hands around her stomach with his crotch area close to her body. She observed defendant hug other girls in the same way in the art room. She later told several of her friends, including Carol Z., about what had happened. On March 21, 2001, Crystal passed a note to another student, describing what defendant had done to her. The note stated, “I was sitting in ISS and the teacher comes up behind me and tries to touch me. What a pervert.” The note was intercepted by a teacher and taken to the principal. That day, Crystal told the principal about defendant’s conduct and gave a statement to the police. At that time, Crystal did not know anything about Lisa V.

Carol Z. testified that when she was a 15-year-old sophomore during the 2000-01 school year, defendant made physical contact with her in the art room and hallways some 15 times. Some of these times he approached from behind, but other times he approached from the front. On some occasions, he hugged her; on others, he held her hand or touched her lower back. Sometimes he touched her eyes or her lips or brushed her hair out of her face. She further testified that defendant touched both her breasts and her buttocks, noting that he was always “subtle,” touching her in such a way that others would not be able to see that he was doing anything more than hugging her. She also stated that, on one occasion, defendant asked her about her sex life, which made her feel uncomfortable.

Carol further testified that after Crystal’s note was intercepted, Carol told the principal what had happened to her and gave a statement to police. She had noticed defendant touching other girls, but did not know if he had touched them on the breasts. However, a number of other girls, including Ranee T., Mica H., Natalie J. and Rachel J, told her that the same thing had happened to them. When questioned, however, those girls did not want to have any part of the case and would not talk about it. Carol did not know about Lisa V.’s complaints about defendant.

Lisa V. testified to three incidents of sexual contact with defendant that took place in the fall semester of 2000, when she was a 17-year-old junior. The first time, she was seated at a desk in study hall, when defendant approached her from behind, grabbed her sides, and then put his fingers under her breasts so that the sides of his index fingers touched her breasts. The second time was also in study hall, and the defendant did the same thing he did the first time. He then sat across from her, winked at her, and took her daily planner and drew a picture of a little devil and wrote next to it, “Lisa is a horny devil.” The third incident occurred during a makeup test for chemistry class just before Christmas break. Defendant was acting as a proctor to make sure that Lisa did not cheat on the test. During the test, defendant twice approached her from behind and rubbed her shoulders and breasts. He then approached her from the left side, put his right hand on her back, and rubbed his crotch against her arm. She stated that “there was an obvious bulge in his pants” when he did this. After the holiday break and after consulting with her family about the problem, she reported the incident to a school counselor. Defendant later received a letter of reprimand from the school authorities over the matter.

Ashley A. testified about two incidents that occurred with the defendant, the first when she was a sophomore in the spring of 2000 and the second when she was a junior in November of 2000. The first physical contact defendant made with her took place in the art room where she had gone to draw when no class was in session there. She was sitting at a stool, drawing, when defendant came up from behind her, brushed his hand against her back, and then stood very close to her and “rubbed his genital area against her leg.” The second incident took place in study hall. There, she showed a group of friends a new tattoo she had gotten on her shoulder. She wore a shirt over a tank top and had pulled the shirt back to expose the tattoo. Defendant approached the group, and she showed him the tattoo also. He came from behind her to look at it, then rubbed his hand against her breast. At the time, she thought it could have been accidental, but in retrospect, she believed it was intentional. After the last incident, she tried to avoid defendant as much as she could.

Sergeant Mike Kreke of the Clinton County sheriff’s department talked to defendant in April 2001, and took a signed, written statement from him, which is as follows: “It’s not uncommon for me to put my hand on somebody’s shoulder while talking to them. I will sometimes put my hand on the waist or back also. There is no sexual connotation. To me what I have done is not inappropriate conduct.” Defendant also told the officer that he is a “touchy feely type person.”

Defendant testified on his own behalf. He denied any sexual contact with the victims, but did not deny touching them. When asked if he had any contact with Crystal H. in the in-school suspension room, defendant answered that he “walked over and maybe put [his] hand on her arm and asked her if she had anything to do.” He further testified that he could not have touched her in the way she described because the kind of chair she was sitting in made it impossible. A photograph of the desks and chairs used in the in-school suspension room was admitted into evidence. The photograph shows that the chair had a solid back, the height of which was level with the height of the desk. The chair did not have arms and was not attached to the desk.

Defendant acknowledged that he did speak to Carol Z. at times during her third-period art class. He explained that the art room was a large, open area with numerous tables, and students would move around while doing work there. When asked if he had any physical contact with Carol Z. in the art room, defendant responded, “None that I can recall.”

When asked if he had any physical contact with Ashley A., defendant replied, “None that I am aware of.” He denied touching her breasts. He also stated that he did not remember the incident with the tattoo at all.

When asked if he had any physical contact with Lisa V. on the day of her makeup test, defendant answered, “None that I can recall.” Defendant claimed that because of the structure of the chairs and closeness of the rows of chairs, it would have been impossible for him to rub her breasts in the way she described. When asked about the “horny devil” note in Lisa’s school planner, defendant said, “I don’t recall that at all.” On cross-examination, defendant was asked whether he thought Lisa V. was “lying or misinterpreting” when she said defendant touched her during study hall. Defendant answered, “Misinterpreting,” and then explained that “if ever I did anything to her [I] just put my arm around her shoulder.”

A number of other witnesses testified on defendant’s behalf. Several students from the art class testified that they did not observe defendant improperly touch anyone. A couple of students testified that Carol Z.’s reputation for truthfulness was poor. Mica H. And Rachel J. testified that defendant had never touched them inappropriately during third-period art class, and that they had never told anyone that he had touched them in that manner. Jared F. testified that he dated Carol Z. during the 2000-01 school year, although they later had an unfriendly breakup. During that year, Carol told him that defendant was a pervert, but did not explain it further. Shortly before defendant was fired, however, she explained to Jared, while crying, that defendant had been touching her breasts and buttocks, and coming up behind her and placing his hands on her lower stomach.

During closing argument, defense counsel argued that the victims were not telling the truth and that the evidence supported a finding that defendant never touched them. Similar to assertions he had made in his opening statement, defense counsel told the jury, “[I]t’s possible there was some incidental touching by [defendant] with these girls but there is certainly nothing to show that he touched either girl with any sexual intent.” Defendant was convicted on both counts and sentenced to 180 days in jail and 30 months of probation.

The appellate court affirmed, finding that the other-crimes evidence was admissible because it was relevant to show defendant’s 
modus operandi
 and to show his intent, which are two recognized exceptions to the prohibition against other-crimes evidence. 343 Ill. App. 3d at 748. One justice dissented, believing that the majority’s conclusion was contrary to 
People v. Bobo
, 278 Ill. App. 3d 130 (5th Dist. 1996), where the court found that the State was prohibited from presenting evidence of uncharged fondling incidents of students because the defendant teacher denied touching his accusers, and intent was therefore not an issue. See 343 Ill. App. 3d at 753-54 (Kuehn, J., dissenting). The dissent also believed that the 
modus operandi
 exception was not applicable because the uncharged offenses were not so similar to the charged offenses as to earmark them as the handiwork of a single person. 343 Ill. App. 3d at 755-56 (Kuehn, J., dissenting).

ANALYSIS

Defendant argues that the testimony of Lisa V. and Ashley A. did not fit within any recognized exception to the prohibition against other-crimes evidence so that it could be introduced at trial. Defendant further argues that because he denied any improper touching, his intent was not at issue and the other-crimes evidence was therefore not admissible. We disagree with both points.

This court has repeatedly held that evidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant’s propensity to commit crimes. 
People v. Heard
, 187 Ill. 2d 36, 58 (1999); 
People v. Robinson
, 167 Ill. 2d 53, 62 (1995); 
People v. Cruz
, 162 Ill. 2d 314, 348 (1994); 
People v. McKibbins
, 96 Ill. 2d 176, 182 (1983); 
People v. McDonald
, 62 Ill. 2d 448, 455 (1975); 
People v. Dewey
, 42 Ill. 2d 148, 157 (1969). For instance, other-crimes evidence is admissible to show 
modus operandi
, intent, identity, motive or absence of mistake. 
Robinson
, 167 Ill. 2d at 62-63; 
McKibbins
, 96 Ill. 2d at 182. Other-crimes evidence may also be permissibly used to show, by similar acts or incidents, that the act in question was not performed inadvertently, accidently, involuntarily, or without guilty knowledge. 1 J. Strong, McCormick on Evidence §190 (5th ed. 1999). Where such other-crimes evidence is offered, it is admissible so long as it bears some threshold similarity to the crime charged. 
Cruz
, 162 Ill. 2d at 348-49. The admissibility of other-crimes evidence rests within the sound discretion of the trial court, and its decision on the matter will not be disturbed absent a clear abuse of discretion. 
Heard
, 187 Ill. 2d at 58; 
People v. Placek
, 184 Ill. 2d 370, 385 (1998).

In the present case, the other-crimes testimony of Lisa and Ashley fit squarely within the recognized exceptions, which allow such evidence to show defendant’s intent or to show that the acts in question were not performed inadvertently, accidently, involuntarily, or without guilty knowledge. Defendant was charged with two counts of aggravated criminal sexual abuse pursuant to section 12–16(f) of the Criminal Code of 1961 (Code) (720 ILCS 5/12–16(f) (West 2000)). That section provides that “[t]the accused commits aggravated criminal sexual abuse if he or she commits an act of sexual conduct with a victim who was at least 13 years of age but under 18 years of age when the act was committed and the accused was 17 years of age or over and held a position of trust, authority or supervision in relation to the victim.” 720 ILCS 5/12–16(f) (West 2000). “Sexual conduct” is defined by section 12–12(e) of the Code as “any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused *** for the purpose of sexual gratification or arousal of the victim or the accused.” 720 ILCS 5/12–12(e) (West 2000).

Aggravated criminal sexual abuse, as it was charged here, is a specific-intent crime–the State must show defendant intentionally or knowingly touched the victim on the breast for purposes of sexual gratification. In cases involving specific-intent crimes, some courts hold that intent is automatically at issue for purposes of deciding whether to admit other-crimes evidence, regardless of whether the defendant has made intent an issue in the case. See, 
e.g.
, 
People v. Deenadayalu
, 331 Ill. App. 3d 442, 448 (2002) (other-crimes evidence is relevant in a specific-intent sexual assault prosecution to prove defendant’s intent or lack of an innocent frame of mind, distinguishing other cases to the contrary on the basis that those cases involved child victims); 
United States v. Monzon
, 869 F.2d 338, 344 (7th Cir. 1989) (intent is always at issue when the crime charged requires proof of specific intent, but in this case the proffered other-crimes evidence was inadmissible because nothing showed that it was relevant to that intent); see also 
Commonwealth v. Seiders
, 531 Pa. 592, 596-97, 614 A.2d 689, 691 (1992) (holding in part that intent was not an issue in the case because intent was not an element of the offense for which defendant was charged). Other courts have taken the opposite approach. See, 
e.g.
, 
State v. Lipka
, 174 Vt. 377, 391-92, 817 A.2d 27, 39-40 (2002) (intent was not “genuinely in issue” even though the sexual assault charge at issue was a specific-intent crime; this was because no jury that believed the sexual acts testified to by the victim could have believed that they happened accidentally).

Defendant is mistaken that his intent was not at issue simply because he maintained that he had never actually touched the victims’ breasts. Defendant’s argument ignores the inferences that can be drawn from the testimony of the witnesses and the statements made by his counsel during opening and closing argument. Defendant testified that he liked to touch students. There was evidence presented that he was a “touchy feely type person,” who often placed his hands on students. The victims’ testimony indicated that defendant’s sexual touching was subtle. Defendant himself testified that one of the victims “misinterpreted” his actions in touching her breasts. The jury could have believed that defendant was either mistaken or lying about his touching of female students in a sexual manner. Apparently aware of this possibility, defense counsel acknowledged that defendant is the kind of person that touches people, but even if there was contact with the victims, it was merely incidental contact and not for sexual arousal. Thus, defense counsel raised motive, intent and the possibility that any of the complained-of touching was inadvertent in such a way that the jury could acquit defendant even if it believed that he actually touched the victims’ breasts. A defendant may not use ambiguity by denying commission of the act that comprises the offense, thereby seeking to bar other-crimes evidence, while at the same time leaving room to argue lack of intent to the jury. 
United States v. Colon
, 880 F.2d 650, 659 (2d Cir. 1989). Under the circumstances presented here, we find that defendant’s intent was a genuine issue in the case.

The principal cases relied upon by defendant are easily distinguishable, as the actions of the defendants in those cases were much more overt, and there was no question as to whether the acts happened accidentally or with the requisite intent if they happened at all. In 
People v. Bobo
, 278 Ill. App. 3d 130 (1996), the defendant took a female student into his office, moved his hand to her breast, attempted to kiss her against her violent protests, and then informed her that if she changed her mind, she knew where to find him. 
Bobo
 held that evidence of other sexual misconduct with students was unnecessary to show intent, guilty knowledge, accident, or absence of mistake because these factors were clearly shown by the testimony concerning the act itself. 
Bobo
, 278 Ill. App. 3d at 133. Similarly, in 
People v. Woltz
, 228 Ill. App. 3d 670 (1992), there was no doubt as to defendant’s intent or whether the defendant’s conduct was an accident because it was alleged that the defendant inserted his finger into the victim’s vagina. In other words, no reasonable jury could have believed that the charged events happened accidentally or unintentionally. Moreover, the crime charged in 
Woltz
 did not require proof of the defendant’s intent. See Ill. Rev. Stat. 1989, ch. 38, par. 12–14(b)(1). In contrast to 
Bobo
 and 
Woltz
, defendant’s actions here were much more subtle. The jury had to resolve whether defendant may have inadvertently or accidentally touched the victim’s breasts, and therefore lacked any purpose of sexual arousal. We hold that in this kind of case, evidence of other offenses similar to the charged offenses may be admissible to show defendant’s intent and to show that the touching was not incidental or accidental.

Furthermore, we note that this case is more like 
People v. Novak
, 163 Ill. 2d 93 (1994), and 
People v. Deenadayalu
, 331 Ill. App. 3d 442 (2002), than 
Bobo
 and 
Woltz
. In 
Novak
, the defendant blind-folded the 10-year-old victim and then sexually assaulted him under the guise of applying various strength and flexibility exercises to improve the victim’s baseball skills. The defendant in 
Novak
 placed an innocent construction on his acts, and argued that the testimony of three other children could not be used to prove defendant’s guilty knowledge or intent. This court rejected defendant’s contention, holding that evidence of the commission of other crimes is admissible when such evidence is relevant to prove any of the following: 
modus operandi
, intent, identity, motive, or absence of mistake. 
Novak
, 163 Ill. 2d at 117.

In 
Deenadayalu
, the criminal sexual abuse complaint brought against the defendant physician alleged that he rubbed his genitals against the leg of the victim for purposes of sexual arousal. The defendant denied the conduct and placed an innocent construction on his actions. The appellate court held that evidence of other similar sexual conduct committed by the defendant was admissible because intent and absence of mistake were crucial issues in the case. 
Deenadayalu
, 331 Ill. App. 3d at 449.

Similarly, defendant in the present case attempted to place an innocent construction on his acts: he claimed he did not touch breasts, but that he was a touchy-feely person and his actions may have been “misinterpreted.” 
Novak
 and 
Deenadayalu
 are strong support for the conclusion that the evidence in the present case was properly admitted.

Additionally, we note that less similarity between the facts of the crimes charged and the other offenses is required when the evidence is admitted to show intent, lack of accident or any other exception other than 
modus operandi
. In cases where evidence of other crimes is offered, however, to establish 
modus operandi
, a higher degree of similarity between the facts of the crimes charged and the other offenses is required. 
Cruz
, 162 Ill. 2d at 349. This higher degree of similarity is necessary because 
modus operandi
 refers to a pattern of criminal behavior so distinctive that separate crimes are recognized as the handiwork of the same person. 
Cruz
, 162 Ill. 2d at 349. Nevertheless, courts have acknowledged that even where evidence of other crimes is offered to prove 
modus operandi
, some dissimilarity between the crimes will always be apparent. 
Cruz
, 162 Ill. 2d at 349; 
People v. Taylor
, 101 Ill. 2d 508, 521 (1984). But again, the same degree of similarity is not necessary when evidence of the other crimes can be offered, as is the case here, for some valid purpose other than to show 
modus operandi
. 
Cruz
, 162 Ill. 2d at 349. Instead, mere general areas of similarity will be sufficient to allow the evidence to be admitted in such cases. 
Cruz
, 162 Ill. 2d at 349-50; 
Mckibbins
, 96 Ill. 2d at 185-86.

Here, the uncharged crimes shared ample similarity to the charged crimes. All of the offenses, both charged and uncharged, occurred at the same high school, during school hours, and in the course of the same one-year period from the spring of 2000 to the spring of 2001. All four female students testified that defendant approached them from behind before rubbing their breasts. Lisa’s testimony that defendant placed his hands on her side, and then put the sides of his fingers on the lower part of her breast was nearly identical to the facts of the charged offense involving Crystal, who testified that defendant moved his hands from her stomach to touch her breasts from underneath. Furthermore, both Lisa’s and Ashley’s testimony that defendant rubbed his crotch or genital area against their bodies was similar to Crystal’s testimony that defendant placed his crotch area close to her body. Perhaps most importantly, however, all of the incidents involved a subtlety that would afford defendant an opportunity to argue that the victims had “misinterpreted” his actions if any complaints were made. Under these circumstances, we find that the other-crimes evidence shared sufficient general similarity to be admissible. We further find that the trial court did not abuse its discretion in determining that the probative value of the evidence outweighed any undue prejudice to defendant.

Lastly, we note the State’s argument that Lisa’s and Ashley’s testimony was admissible under section 115–7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115–7.3 (West 2002)), which became effective January 1, 1998. Section 115–7.3 provides in relevant part:

“This Section applies to criminal cases in which:

(1) the defendant is accused of *** aggravated criminal sexual abuse ***

* * *

(b) If the defendant is accused of an offense set forth in paragraph (1) *** evidence of the defendant’s commission of another offense *** may be considered for its bearing on any matter to which it is relevant.

(c) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances.

(d) In a criminal case in which the prosecution intends to offer evidence under this Section, it must disclose the evidence, including statements of witnesses or a summary of the substance of any testimony, at a reasonable time in advance of trial, or during trial if the court excuses pretrial notice on good cause shown.” 725 ILCS 5/115–7.3 (West 2002).

In 
People v. Donoho
, 204 Ill. 2d 159, 176 (2003), we recently found that this statute enables courts to admit evidence of other crimes to show a defendant’s propensity to commit sex offenses if the requirements of the statute are met. We further noted that to be admissible under this statute, the other-crimes evidence should have some threshold similarity to the charged crime. 
Donoho
, 204 Ill. 2d at 184. As factual similarities increase, so does the relevance or probative value. 
Donoho
, 204 Ill. 2d at 184. However, where such evidence can be offered for something other than 
modus operandi
, mere general areas of similarity will suffice. 
Donoho
, 204 Ill. 2d at 184.

Defendant argues that the State waived any reliance upon the statute by failing to raise it before the trial court. Additionally, defendant asserts that the State did not timely disclose Ashley’s testimony, as it did not disclose her until three days before trial and there was no ruling by the trial court of “good cause shown,” as is required by the statute.

We find it unnecessary to address these arguments, however, because of our conclusion that the evidence was otherwise admissible under our common law analysis.

CONCLUSION

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in admitting the other-crimes evidence in this case. Accordingly, we affirm the judgment of the appellate court.

Affirmed.

JUSTICE KARMEIER took no part in the consideration or decision of this case.

JUSTICE KILBRIDE, dissenting:

I agree with the majority that other-crimes evidence is not admissible if it is relevant only to establish the defendant’s propensity to commit crimes and that it remains admissible only to show identity, motive, 
modus operandi
, or absence of mistake. 
People v. Robinson
, 167 Ill. 2d 53, 62-63 (1995). Here, however, I believe the majority errs by holding that the testimony of Lisa V. and Ashley A. was admissible to show intent and absence of mistake. Slip op. at 7. In my view, neither exception is applicable, and therefore, I respectfully dissent.

Defendant was specifically charged with touching the victims’ breasts for sexual gratification. Defendant did not argue that he touched the victims’ breasts inadvertently or by mistake, or that he had no sexual purpose in touching them. Indeed, even the majority acknowledges that defendant denied touching the victims’ breasts 
at all
. Slip op. at 8.

Instead, the majority contends defendant’s denial ignores the inferences that could be drawn from the witnesses’ testimony and the arguments of defense counsel. Slip op. at 8. The majority asserts the evidence established that defendant “liked to touch students” and reasons the jury could have inferred that he was either lying or mistaken about touching the victims’ breasts. Slip op. at 8. The majority also suggests defense counsel’s awareness of this possibility prompted counsel’s argument that if defendant had touched students it was merely incidental contact. This argument, according to the majority, constituted an attempt to use ambiguity “to bar other-crimes evidence, while at the same time leaving room to argue lack of intent to the jury.” Slip op. at 8-9. I disagree and believe the majority’s conclusions represent unjustified extensions of the actual evidence in this case.

For example, in his statement to police, defendant stated that it was not uncommon for him to put his hand on a shoulder while talking to someone and that he sometimes puts his hand on a waist or back because he is a “touchy feely type person.” Slip op. at 4. He did not say, and the evidence did not show, that he just “liked to touch students,” as the majority suggestively summarizes the testimony. See slip op. at 8. In his testimony concerning the complainants in this case, defendant stated only that he might have put his hand on Crystal H.’s arm. He did not indicate he may have also touched her breast and then later attempt to justify his conduct by saying the act was inadvertent.

As justification for admitting the other-crimes evidence, the majority also cites defendant’s testimony “that one of the victims ‘misinterpreted’ his actions in touching her breasts” because “[t]he jury could have believed that defendant was either mistaken or lying about his touching of female students in a sexual manner.” Slip op. at 8. The majority implies that the “victim” who may have misinterpreted defendant’s actions was one of the complainants, but that is not the case. As noted in the fact section (slip op. at 5), the purported “victim” was Lisa V., who was 
not
 one of the complainants in this matter and who provided some of the other-crime testimony at the heart of this appeal. Using defendant’s cross-examination responses concerning the substance of other-crimes testimony to justify the initial admission of that other-crimes testimony defies logic.

In addition, the mere possibility suggested by the majority that the jury might determine defendant is mistaken or lying about his actions fails to justify the admission of the other-crimes evidence. See slip op. at 8. The jury is always required to make credibility determinations. That truism alone cannot justify the admission of the other-crimes evidence in this case.

Indeed, defendant’s testimony actually belies 
any
 attempt to justify an incidental touching of either Crystal H. or Carol Z. Defendant testified that the seating arrangements in the in-school suspension room precluded the type of contact claimed by Crystal H. Slip op. at 4. Defendant’s assertion that the alleged contact was not physically possible cannot support a reasonable inference that the contact may have occurred but was merely accidental.

Similarly, in the case of Carol Z., defendant did not acknowledge ever having any physical contact with her. Slip op. at 5. Again, his testimony provides no rational basis for a jury to infer that defendant may have accidentally touched her breast, as charged in the information. Defendant’s testimony did not justify the majority’s conclusion that the jury could have inferred that he accidentally touched the complainants’ breasts.

In a closely related point, the majority also notes defense counsel’s argument that any physical contact with the victims was merely incidental. The majority contends that defendant thus raised the issues of motive and intent and intended to use ambiguity unfairly to defendant’s advantage. In reaching this conclusion, however, the majority ignores the precise nature of the charged conduct, namely, the touching of two minors’ breasts, as well as the context of the argument. When viewed in the context of the actual evidence presented by the defense, counsel’s argument simply summarizes defendant’s testimony that he may have touched Crystal H.’s arm and attempts to counter the undue prejudice created by the admission of the other-crimes evidence after the trial court’s denial of defendant’s motion 
in limine
. At no time did 
defendant
 lead the jury to believe he may have also touched either Crystal H. or Carol Z. on the breast–but only incidentally. There was no ambiguity on that point. Accordingly, defense counsel’s argument could not have been seeking an unfair advantage from any ambiguity concerning defendant’s intent in touching the victims’ breasts, contrary to the majority’s reasoning. Counsel’s argument necessarily attempted to offset the adverse inferences created by the improper admission of the other-crimes evidence. There is no basis for concluding the argument was imposed for an improper purpose.

Next, the majority rejected defendant’s reliance on 
People v. Bobo
, 278 Ill. App. 3d 130 (1996), and 
People v. Woltz
, 228 Ill. App. 3d 670 (1992), claiming that the charged conduct in those cases was more overt than the “subtle” actions in this case. Slip op. at 9. The primary analyses in those decisions, however, actually focused on the defendants’ denial of the charged acts and the similarity of the other-crimes evidence to the facts in the case.

In 
Bobo
, the other-crimes evidence was offered at the defendant’s aggravated criminal sexual abuse trial “to show intent and/or motive and/or knowledge.” 
Bobo
, 278 Ill. App. 3d at 132-33. The court reasoned that because the defendant denied the charged contact and did not attempt to excuse it as accidental, the other-crimes evidence “served only to demonstrate defendant’s alleged propensity to sexually assault or harass female students.” 
Bobo
, 278 Ill. App. 3d at 133. In reversing the defendant’s conviction due to the “highly prejudicial” nature of the erroneously admitted other-crimes evidence, the court noted that while two incidents with other students “reveal[ed] several similarities,” “[m]uch of the evidence lacked any similarity to the incident at bar, other than that it involved the alleged fondling of a female student at the hands of defendant.” 
Bobo
, 278 Ill. App. 3d at 133. The same may be said in this case, where the charged and uncharged conduct are similar only in the broadest of terms.

In 
Woltz
, the trial court admitted other-crimes evidence, in relevant part, to show absence of mistake. 
Woltz
, 228 Ill. App. 3d at 671. The appellate court rejected that ground, reasoning that the defendant denied the charged conduct. Since the defendant did not claim the acts may have occurred accidentally, there was no need to refute that claim by the use of other-crimes evidence. 
Woltz
, 228 Ill. App. at 674. In the instant case, defendant also denies the alleged contact, again making it unnecessary to admit other-crimes evidence on the basis of lack of intent or absence of mistake. In addition, the 
Woltz
 court did not rely on the obvious nature of the charged acts in its decision. The majority’s insistence that the overt nature of the charged acts was determinative in this case is misplaced. See slip op. at 9.

My disagreement with the majority also extends to its heavy reliance on 
People v. Deenadayalu
, 331 Ill. App. 3d 442 (2002), and 
People v. Novak
, 163 Ill. 2d 93 (1994). Slip op. at 9. As even the majority acknowledges in a parenthetical note, 
Deenadayalu
 specifically distinguished cases holding that evidence of other crimes is not relevant “on the basis that those cases involved child victims.” Slip op. at 8. See also 
Deenadayalu
, 331 Ill. App. 3d at 449. Since 
Deenadayalu
 explicitly distinguished cases such as the instant one involving child victims, the majority’s reliance on the rationale in that case is seriously, if not fatally, flawed.

The majority’s reliance on 
Novak
 is also ill-advised. In 
Novak
, the defendant did not appeal the admission of the other-crimes testimony. Rather, he argued that the jury instruction limiting the use of the other-crimes evidence to the issue of 
modus operandi
 and intent was inapplicable because he had provided “an innocent construction of his acts.” 
Novak
, 163 Ill. 2d at 116. Notably, he did not wholly disavow the acts. Here, defendant did not attempt to impose “an innocent construction” on his acts. Instead, defendant denied that he had touched the complainants’ breasts at all. That distinction alone is sufficient to erode confidence in the majority’s position. Thus, rather than providing “strong support” that other-crimes evidence was admissible under the circumstances in this case as the majority claims (slip op. at 10), 
Novak
 and 
Deenadayalu
 significantly undermine the majority’s position.

Furthermore, 
Deenadayalu
 is also damaging to the majority opinion in yet another way. In addition to its express recognition that its holding does not apply to cases such as the instant one where the victims are children, 
Deenadayalu
 relied on cases that admitted other-crimes evidence based on far more numerous and specific similarities than are present here. See 
Deenadayalu
, 331 Ill. App. 3d at 448. The 
Deenadayalu
 court discusses 
People v. Luczak
, 306 Ill. App. 3d 319, 325 (1999), where the appellate court remarked that the two crimes at issue “were remarkably similar.” In each instance, the female victims were walking when offered a ride by defendant, who “drove each victim to a secluded alley in the same area of Chicago,” attacked each woman in his car, threatened to throw her into the lake or river, called each victim a “tease” and other similar names, assaulted the victims in the same manner, talked to each about his connection to the Latin Kings, and, after the attack, drove the victim to her original destination. 
Luczak
, 306 Ill. App. 3d at 325.

Deenadayalu
 also relies on 
People v. Harris
, 297 Ill. App. 3d 1073 (1998), noting “the similarities between the two crimes–the victims were abducted in the same area, driven to a similar location, assaulted, and returned to locations near to where they lived and from where they had been taken.” 
Deenadayalu
, 331 Ill. App. 3d at 448. Finally, 
Deenadayalu
 discusses 
People v. Johnson
, 239 Ill. App. 3d 1064 (1992), acknowledging “numerous similarities between the other conduct and the charged offense, including that both victims were abducted in the same manner and both victims were beaten, choked, and bitten.” 
Deenadayalu
, 331 Ill. App. 3d at 448.

In contrast, here the only similarities the majority cites between the charged and uncharged conduct are: (1) the general setting, namely a full calendar year at a public high school; (2) approaching the victims from behind; and (3) the “subtlety” defendant allegedly employed in the assaults. Slip op. at 11. The majority relies most heavily on the third factor. Slip op. at 8-9, 11. That claimed similarity is particularly suspect because it would be highly likely that any potential perpetrator of sexual abuse in a busy public high school who wished not to be immediately apprehended would indeed be surreptitious in his conduct. That factor adds little weight in the analysis.

Likewise, it is not particularly notable that the alleged abuse took place in the same general location and time frame. While the incidents occurred during school hours, on school grounds, they encompassed a one-year time frame and a variety of settings on the school grounds, including an in-school suspension room with another student present, an art room both with and without the presence of an ongoing class, a study hall with other students present, and a room being used for a makeup test. Thus, the specific circumstances and locations varied widely within the broad perimeters of the school. Again, little weight can justifiably be given to this purported “similarity.”

As for the allegation that defendant consistently approached the victims from behind, that was not the case with complainant Carol Z., who testified that she was approached from both the back and the front. Slip op. at 3. While the direction of approach was similar in some incidents, that factor alone is far from being determinative given the tremendous prejudicial effect the other-crimes evidence likely had on the jury. See 
People v. Rogers
, 324 Ill. 224, 229-30 (1926) (recognizing the underlying basis for the common law rule against the admission of other-crimes evidence as the concern that average jurors will give that evidence too much weight and convict a defendant on the basis of prior or cumulative conduct instead of the facts proven in support of the charged offense).

Moreover, the differences between the charged and uncharged acts are far more distinctive and numerous than the claimed similarities. Both Lisa V. and Ashley A. testified to a large number of incidents involving no factual similarity to the charged conduct besides being in the same school during school hours. As stated previously, in all but one incident reported by Lisa and Ashley the uncharged misconduct took place during study hall. Notably, 
none of the charged incidents occurred in study hall
. More importantly, the type of abuse alleged varied dramatically in the charged and uncharged acts. The information filed against defendant limited the charged acts to touching breasts, but the uncharged incidents ranged from that to rubbing genitals on various parts of the victims’ bodies to suggestive winking followed by the making of lascivious drawings and text. Surely that range of conduct does not comport with the degree of similarity required in 
Deenadayalu
, relied on the majority, or by 
Luczak
,
 Johnson
, and 
Harris
, all cited with approval in 
Deenadayalu
.

Admittedly, less similarity is required in cases not involving the question of 
modus operandi
. Slip op. at 12. Nonetheless, the distinct lack of much factual similarity at all between the charged and uncharged acts is the most troubling aspect of the majority opinion. I am deeply concerned that under the precedent set in this case, the traditionally limited exceptions will be construed so broadly as to all but swallow up our long-standing prohibition against the use of other-crimes evidence. See 
People v. Rogers
, 324 Ill. 224, 229-30 (1926). The majority’s perfunctory conclusion that any undue prejudice to defendant is outweighed by the probative value of the other-crimes evidence (slip op. at 11) does little to assuage my concerns. For these reasons, I must respectfully dissent.

JUSTICE FREEMAN joins in this dissent.