2023 IL App (1st) 220427

SIXTH DIVISION
September 15, 2023

No. 1-22-0427

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, |
| | ) | Criminal Division |
| v. | ) | |
| | ) | No. 19 CR 14458 |
| CECIL SMART, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Carol M. Howard |
| | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Justice Mikva and Justice C.A. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    This case calls on us to examine when a defendant charged with sexual abuse of a minor

has put his intent at issue such that the State may offer evidence of other wrongful acts to

establish his intent. Here, the defendant admitted that he slept in the same bed with the minor but

denied that he had any physical contact with him and did not otherwise offer any evidence or

argument that any physical contact was merely accidental or incidental. We conclude that, under

these circumstances, the defendant did not put his intent at issue and the trial court erred in

admitting other acts evidence as proof of defendant's intent. Accordingly, we reverse and remand for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3     The defendant, Cecil Smart, was charged with three counts of aggravated criminal sexual abuse based on allegations that on or around July 26, 2018, he sexually abused J.P., a 16-year-old boy from Philadelphia who was spending the summer in Chicago with his older sister. Count I alleged that Smart knowingly committed an act of sexual penetration upon J.P. by putting his mouth on J.P.'s penis, count II alleged that Smart touched J.P.'s penis with his hand for the purpose of sexual gratification, and count III alleged that Smart knowingly committed an act of sexual conduct upon J.P. by causing J.P.'s hand to touch Smart's penis. After a bench trial, Smart was convicted of the first two counts, found not guilty on the third count, and sentenced to 30 months of probation. Smart's motion for a new trial was denied, and he timely appealed. Smart argues that the trial court reversibly erred by admitting other acts evidence and contends that he received ineffective assistance of counsel.

¶ 4     The evidence at trial revealed the following. In 2018, when J.P. was 16 years old, he spent the summer with his older sister, Ciera S., who lived in Chicago and worked for Breakthrough Urban Ministries (Breakthrough). J.P. did volunteer work at Breakthrough. Smart used to work at Breakthrough as well, and he and Ciera became friends. By the time J.P. arrived in Chicago, Smart had already been terminated by Breakthrough, but Ciera and Smart continued to socialize. Multiple witnesses testified that Ciera was romantically interested in Smart, but Smart only wanted to be friends. Smart lived with his brother, Frank; Frank's partner, Amanda; and Frank and Amanda's children.

¶ 5     Ciera introduced J.P. to Smart, and afterwards, Smart invited J.P. along when he took his nephews on various outings. First, Smart invited J.P. to go to the zoo. The night before their trip, J.P. spent the night at Smart's house because Ciera had to work early the next morning and did not think she would have time to drop him off. Smart directed J.P. to sleep next to him in his bed, and the two slept side by side without incident.

¶ 6     Several weeks later, Smart invited J.P. to go with him and his nephews to see fireworks at Navy Pier, and J.P. accepted. J.P. testified that in the car on the way to the fireworks show he saw Smart drinking what he believed was alcohol. J.P. said that when Smart offered him the alcohol, he drank some because he "kind of felt pressured" to do so. By the time Smart, J.P., and Smart's nephews arrived at Navy Pier, the fireworks were already over, but they looked at the city skyline for a while. Then, they stopped at McDonalds for food and returned to Smart's house to eat. J.P. testified that Smart offered him more alcohol at the house and that he drank about "two shots worth," which made him feel sick. J.P. then threw up in the kitchen, and Smart cleaned it up.

¶ 7     Afterwards, J.P. took a shower and then went to bed. He testified that he slept in Smart's bed because that is where he slept the last time he stayed over. According to J.P., Smart got in bed with him, and shortly thereafter, Smart "started touching [him]." J.P. said that he kept his eyes closed and pretended to be asleep. Smart then pulled down J.P.'s shorts and underwear, started stroking J.P.'s penis, and then put his mouth on J.P.'s penis. J.P. testified that even though his eyes were closed, he could tell Smart's mouth was on his penis because he heard Smart's breath and felt his beard. Smart rubbed his penis against J.P.'s closed fist as well. J.P. testified that he did not cry out or fight back at any time because he was "scared" of what Smart might do

and because he believed "nobody would be able to help [him]." Testimony established that Frank and Amanda were home that night, as well as Smart's niece and nephews.

¶ 8    J.P. testified that the morning after his encounter with Smart he texted his friend M.T. and told her "everything that happened." He explained that he did not tell his mom or sister what Smart had done to him because he did not want them to worry. It was not until several months later, in October 2018, that J.P. finally told his mother and sister what had happened. He then reported the incident to police.

¶ 9    Smart testified in his defense. He admitted that he and J.P. slept in the same bed that night but denied J.P.'s allegations of sexual abuse, saying they "never happened." He said he never touched J.P.'s penis, never put his mouth on J.P.'s penis, and never had J.P. touch his penis. The State cross-examined Smart about a prior incident, which we discuss below.

¶ 10    Before trial, the State filed a motion to allow "other crimes" evidence about three prior incidents. First, the State moved to admit evidence that on March 29, 2018, when Smart was employed as the associate director of the sports and fitness academy at Breakthrough, he was reprimanded for being alone in a room with a male teenage student in violation of company policy. Second, the State moved to admit evidence that on June 12, 2018, Smart drove a male teenage student home alone, again in violation of Breakthrough's company policy, and grabbed the student's buttock. Breakthrough terminated Smart's employment shortly after this incident. Third, the State moved to admit evidence of an incident that took place in 2012 when Smart was working as an assistant basketball coach at Sterling College in Kansas. In approximately October 2012, Smart went into an 18-year-old student athlete's dorm room and wrestled with him. Later that night, when Smart saw the student at a local convenience store, he offered him a ride. On the ride home, Smart pulled over on the side of the road in a semi-deserted area and got some

4

alcohol from the trunk. Smart drank some of the alcohol and offered some to the student. The student drank so much that he vomited. The student reported the incident, and Smart was formally reprimanded by Sterling College.

¶ 11    At the hearing on the motion, the State conceded that the prior acts "don't fall under the propensity statute" (725 ILCS 5/115-7.3 (West 2018)), but argued that they "are admissible under common law." The State pointed out that other acts evidence can be admitted if it is not used for propensity purposes but instead is used to show "modus operandi; knowledge after the mistake or action; a defendant's state of mind; the absence of an innocent frame of mind or the presence of criminal intent; and that the crime charged was part of a common design, scheme, or plan." The State argued that in each of these prior incidents, Smart

> "manufactures a situation whereupon he can be alone with a male teenager. In each case he meets that teenager through work [***] In each case he makes friends with the teenager and then grooms the child for sexual contact, gaining the child's trust. In each case the defendant was an adult in a position of authority over the teenager that he's grooming or abusing [***] The defendant is using the same scheme, the same common design of getting close to children through his work."

The State also argued that "what these priors show is that [Smart] has a criminal intent. He has a guilty mind. The presence of criminal intent is a reason to admit prior bad acts at common law."

¶ 12    In response, Smart's counsel argued that because none of Smart's prior acts qualify as sex crimes under the statute, they could not be admitted under the propensity statute. He also argued that the prior acts were not sufficiently similar to the charged acts to satisfy any of the common law exceptions and that any probative value of this evidence was far outweighed by its prejudicial effect.

¶ 13    The court found that the Sterling College incident and the March 2018 incident at Breakthrough were inadmissible because there were "no allegations involving any type of sexual conduct whatsoever" and the probative value of this evidence was "far outweighed by its prejudicial effects." However, the court admitted the June 12, 2018, incident where Smart drove a Breakthrough student home alone and grabbed his buttock. The court found the incident "admissible pursuant to *Donoho*" (see *People v. Donoho*, 204 Ill. 2d 159 (2003)) and reasoned that "a hand to the buttocks could be perceived as sexual behavior. And I think there's sufficient case law that supports the position that this incident should be admitted. So I am introducing that incident as other crimes evidence."

¶ 14    At trial, the State cross-examined Smart about the June 12, 2018, incident, asking him if he "grabbed" or "slapped" the Breakthrough student's buttock. The State also asked Smart's brother if he knew Smart "was fired for driving a kid home and grabbing his butt." A stipulation regarding testimony from Breakthrough's human resources director, Marcie Curry, was admitted, which addressed the incident as well. The parties agreed that Curry

> "would testify that on June 22nd, 2018, [Smart] was notified by mail that he was terminated from employment at Breakthrough Ministries due to the fact that on June 12th, 2018, while transporting a participant, [E.L.], home it was alleged that [Smart] touched [E.L.] inappropriately. On March 29th, 2018, it was discovered that [Smart] was working with a program participant alone in the family plex prayer room, and that because of these policy violations *** [Smart's] employment at Breakthrough Urban Ministries was terminated effective June 21st, 2018."

¶ 15                                    II. ANALYSIS

¶ 16    A. The Trial Court Abused Its Discretion When It Admitted Prior Bad Acts Evidence

6

¶ 17    On appeal, Smart argues that the trial court improperly admitted evidence regarding the June 12, 2018, incident because it does not qualify as propensity evidence under the statute and does not fit within any common law exception. We review the trial court's decision to admit other-crimes evidence for an abuse of discretion. *People v. Thingvold*, 145 Ill. 2d 441, 452-53 (1991).

¶ 18    Generally, evidence of a defendant's prior bad acts is not admissible to show the defendant's propensity to commit the charged crime. *People v. Davis*, 248 Ill. App. 3d 886, 891 (1993); Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). This evidence is "objectionable not because it has no appreciable probative value, but because it has too much." *People v. Bobo*, 278 Ill. App. 3d 130, 132 (1996).

¶ 19    An exception to this rule is codified in section 115-7.3 (725 ILCS 5/115-7.3 (West 2018)), which expressly allows the trial court to admit evidence of prior sex offenses to show a defendant's propensity to commit the sex crimes charged. *Donoho*, 204 Ill. 2d at 176.

¶ 20    Even if other acts evidence is not admissible under the propensity statute, it can still be admitted to prove "intent, *modus operandi*, identity, motive, absence of mistake, and any material fact other than propensity that is relevant to the case." *Id.* at 170; Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). In fact, other acts evidence can be admitted if it is relevant for any purpose other than to show a defendant's propensity to commit the crime. *People v. McKibbins*, 96 Ill. 2d 176, 182 (1983).

¶ 21    "[T]he prosecution must identify similarities between the other crime and the crime charged to ensure that the other crimes evidence is not offered merely to show propensity" (*People v. Luczak*, 306 Ill. App. 3d 319, 324 (1999)), although "mere general areas of similarity will suffice." *McKibbins*, 96 Ill. 2d at 186. In addition, because other crimes evidence carries a

high risk for prejudice, the trial court must balance the probative value of the evidence against its prejudicial effect and should "exclude the evidence if its prejudicial effect substantially outweighs its probative value." *People v. Illgen*, 145 Ill. 2d 353, 365 (1991).

¶ 22    Here, the court admitted into evidence Smart's prior act of driving a male teenage student home alone in violation of company policy and then inappropriately touching the student's buttock. The court stated that the evidence was admissible "pursuant to *Donoho*" because "a hand to the buttocks could be perceived as sexual behavior." However, it is unclear from the record whether the trial court allowed the evidence to show propensity to commit the offense under section 115-7.3 (725 ILCS 5/115-7.3 (West 2018)), or for some relevant purpose other than propensity. Under the statute, Smart's prior act could be admitted for propensity purposes only if the alleged battery "involve[d] sexual penetration or sexual conduct as defined in Section 11.0.1 of the Criminal Code of 2012." *Id.* § 115-7.3(a)(2). Section 11-0.1 defines "sexual conduct" as "any knowing touching *** of the sex organs, anus, or breast of the victim *** or any part of the body of a child under 13 years of age *** for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/11-0.1. (West 2018). Because touching the buttocks does not qualify as "sexual conduct" under the statute (*People v. Nibbio*, 180 Ill. App. 3d 513, 517 (1989)), and the male teenage student was over 13 years old at the time of the touching, Smart's prior act does not qualify as a sex offense under section 115-7.3 and thus was inadmissible for propensity purposes.

¶ 23    Before trial, the State conceded that Smart's prior act was not admissible under the propensity statute but argued that the other acts evidence could be admitted to show Smart's common design or plan or his criminal intent. On appeal, the State abandons its common design or plan theory and argues only that the trial court properly admitted the other acts evidence "to

show [Smart's] lack of innocent intent in isolating minors when he was an authority figure so that he could have the opportunity to engage in sexual acts." Smart conversely argues that because he flatly denied any physical contact with J.P. on the night in question, his intent was not at issue, and therefore, the other acts evidence was improperly admitted.

¶ 24     When a defendant has denied the charge and does not claim accident or mistake, Illinois courts have concluded that other crimes evidence is "simply unnecessary" for purposes of proving intent. *People v. Cardamone*, 381 Ill. App. 3d 462, 490 (2008). In *Cardamone*, for example, the defendant was charged with sexually assaulting a number of gymnasts. *Id.* at 464. At trial, the court admitted other-crimes evidence, concluding that it was "relevant to the issues of defendant's intent, [and] absence of an innocent mental state." *Id.* at 489. After the defendant was convicted, he argued on appeal that his "intent and innocent state of mind were not at issue because he did not assert in defense, for example, that the incidents happened but were accidental or were misconstrued," but instead "flatly denied that he ever touched any of the girls in the manners alleged." *Id.* at 489-90. The court concluded that "[w]hen state of mind is not at issue because a defendant claims that the alleged events did not occur, admission of other-crimes evidence for purposes of establishing intent is inappropriate." *Id.* at 490.

¶ 25     In *Bobo*, 278 Ill. App. 3d 130, the defendant was convicted of aggravated criminal sexual abuse of a high school student. *Id.* at 131. At trial, the defendant "denied that the entire incident with [the victim] ever occurred." *Id.* at 133. The court allowed the State to admit reports of "allegations made against defendant by nine different high school girls" to show "intent and/or motive and/or knowledge." *Id.* at 132-33. On appeal, the court concluded that because the defendant denied he committed the charged crime and "did not claim he accidentally touched

[the victim], nor did he give some other type of excuse," the State "did not establish how such evidence showed motive, intent, or knowledge." *Id.* at 133.

¶ 26    Here, the State concedes that Smart "did not claim accident or mistake as his defen[se]" but argues that because Smart admitted he was with J.P. on the night in question and slept in the same bed with him, he put his intent at issue. The State relies on several cases where the court concluded that other acts evidence was properly admitted to show the defendant's intent even though the defendant denied the commission of the crime. We address each case in turn.

¶ 27    In *People v. Wilson*, 214 Ill. 2d 127 (2005), the defendant, a high school teacher, was convicted of aggravated criminal sexual abuse based on allegations that he knowingly touched the victims' breasts for purposes of sexual gratification. *Id.* at 128-29. Before trial, the defendant admitted to police that he was a "touchy feely type person," and said it was "not uncommon" for him to put his hand on someone's shoulder, waist, or back when talking to them. *Id.* at 133. During opening arguments, defense counsel acknowledged that defendant was a touchy-feely kind of person and said that " 'if there was ever any type of contact whatsoever between my client and [the victims] it was simply incidental contact and it had absolutely no sexual nature whatsoever.' " *Id.* at 130. Defendant testified at trial that he may have " 'put [his] arm around [one victim's] shoulder,' " but he denied that he touched her breasts or that any sexual contact occurred. *Id.* at 134. The State presented other-acts testimony from two other students who said the defendant had touched their breasts in the past. *Id.* at 131-32. Defense counsel stated during closing argument that while " '[i]t's possible there was some incidental touching by [the defendant] with [the victims],' " there was " 'certainly nothing to show that he touched either girl with any sexual intent.' " *Id.* at 134. After the defendant was convicted, he argued on appeal that because he denied any improper touching, his intent was not at issue and therefore the other-

crimes evidence should not have been admitted. *Id.* at 135. Our supreme court disagreed, concluding that even though the defendant denied touching the victim's breasts, the other crimes evidence was properly admitted "to show [his] intent or to show that the acts in question were not performed inadvertently, accidentally, involuntarily, or without guilty knowledge." *Id.* at 136. The court highlighted the "inferences that can be drawn from the testimony of the witnesses and the statements made by [defendant's] counsel during opening and closing argument," which established that the defendant was a "touchy feely type person" who often placed his hands on students. *Id.* at 138. It found that the jury could conclude, based on this evidence, that "even if there was contact with the victims, it was merely incidental contact and not for sexual arousal," and that as a result, the defense had raised the issue of intent. *Id.* In a dissent, two justices found that because the defendant denied the alleged contact, it was "unnecessary to admit other-crimes evidence on the basis of lack of intent or absence of mistake" and expressed concern that "under the precedent set in this case, the traditionally limited exceptions will be construed so broadly as to all but swallow up our long-standing prohibition against the use of other-crimes evidence." *Id.* at 147, 151.

¶ 28     Another case cited by the State is *People v. Fretch*, 2017 IL App (2d) 151107. There, the defendant was convicted of sexual exploitation of a child, public indecency, and disorderly conduct based on evidence that he knowingly exposed his penis and masturbated in front of a teenage girl. *Id.* ¶ 1. Before trial, the State moved to admit evidence of the defendant's prior acts, stating that it would "present evidence at trial that defendant told police that 'it was just a coincidence [that] he was masturbating as [the victim] walked by,' " and arguing that the other acts evidence would demonstrate the defendant's intent and rebut any claims of coincidence. *Id.* ¶ 9. The evidence was that (1) several years before the charged offense, the defendant sent

sexually suggestive remarks to a teenage girl via the social networking service MySpace after learning she was a minor, and (2) several days before the charged offense, the defendant blew kisses at the victim, thrust his hips at her in a "humping motion," and then placed his finger to his lips, signaling for the victim to not tell anyone. *Id.* ¶¶ 5-7. Defense counsel argued that it was "premature" for the court to decide whether the other-acts evidence could be admitted to show the defendant's intent or absence of mistake, because it "had not yet decided whether to make intent an issue in the case." *Id.* ¶ 10. Counsel explained that he did not know " 'whether or not the defendant is admitting to the conduct that's [*sic*] he's being accused of or if he flat out denies it.' " *Id.* The State asked for an immediate ruling, saying it "anticipated that intent would be an issue at trial," because they expected the defendant to argue that he "never even saw" the victim when he was masturbating. *Id.* ¶ 11. The court granted the motion, finding that the other acts evidence was relevant to prove the defendant's intent, and specifically to challenge his assertion that he never intended to expose himself to the victim. *Id.* ¶ 48.

¶ 29     At trial, the recording of the defendant's interview with police was played. *Id.* ¶ 27. In it, the defendant admitted that he had been masturbating naked inside his house on the date in question, and that while doing so, he walked to the screen door and opened it to check for mail. *Id.* ¶ 28. He denied seeing the victim, but acknowledged that if she had been outside, she "might have misinterpreted his actions." *Id.* When the defendant testified at trial, however, he denied that he that he had been masturbating at the door at all. *Id.* ¶ 32. When he was confronted with his earlier statements to police, he denied saying he had been masturbating and explained that he had been "flustered" and "confused" by the police's questions. *Id.* ¶ 34. The court credited the defendant's prior confession to police in reaching its decision to convict him. *Id.* ¶ 37. On appeal, the defendant argued that the other acts evidence was improperly admitted because it was

"relevant only to show that he had a propensity to target underage girls." *Id.* ¶ 46. The court found that even though the defendant denied committing the charged offense at trial, he "made intent an issue at trial" because his "testimony at trial placed him where the crime allegedly took place and disputed the State's theory as to the intent behind his presence." *Id.* ¶ 67.

¶ 30     We find the facts of *Wilson* and *Fretch* are critically distinguishable because, in both cases, the evidence presented suggested that the defendant could have accidentally committed the charged offense without possessing the requisite intent. In *Wilson*, defendant admitted he was a "touchy-feely kind of person" and that he may have put his arms around one of the victim's shoulders, and defense counsel argued in opening and closing that although there may have been some "incidental touching," it had "absolutely no sexual nature whatsoever." And in *Fretch*, the defendant admitted in his interview with police that he had been masturbating naked at the front door on the date in question, and although he denied seeing the victim, he admitted that if she saw him, she "might have misinterpreted his actions." Here, by contrast, the defense presented no evidence to suggest that Smart touched J.P. at all. Rather, Smart consistently denied that any physical contact, sexual or otherwise, occurred between him and J.P. He "emphatically denied these allegations" in his interview with police and testified to the same at trial. No evidence presented suggested that Smart had somehow inadvertently or accidentally touched J.P.

¶ 31     The final case relied upon by the State is *Luczak*, 306 Ill. App. 3d 319. There, the defendant was charged with aggravated criminal sexual assault based on allegations that he sexually assaulted a woman in his car. *Id.* Before trial, the State moved to admit evidence that the defendant had sexually assaulted a different woman six years earlier, arguing it showed *modus operandi* and his intent at the time of the charged crime. *Id.* at 319-20. Over defense counsel's objection, the court granted the motion, stating that the other crimes evidence demonstrated

defendant's *modus operandi* and intent. *Id.* at 320. At trial, a detective testified about his conversations with the defendant at the police station. *Id.* at 322. At first, the defendant denied any sex acts occurred between him and the victim. *Id.* However, after he was confronted with inconsistencies between his statement and the victim's, the defendant admitted that the victim was telling the truth and that he had forced her to engage in anal and oral sex. *Id.* Defendant refused to sign any written statements, however. *Id.* Defendant changed his story when he testified at trial. *Id.* at 323. He denied ever speaking with the detective at the police station, said he never had sex with the victim, and explained that he picked the victim up in his car on the night in question so that he could take her to buy drugs. *Id.*

¶ 32    After he was convicted, defendant argued on appeal that evidence of his other crime was improperly admitted to establish his intent because he denied any sexual conduct occurred. *Id.* at 324. After noting that defendant's prior crime and the current charges "contained remarkable similarities," the court found the prior acts evidence was properly admissible to prove both intent and *modus operandi*. *Id.* at 325-26. The court reasoned that because defendant admitted he picked the victim up in his car on the date of the alleged crime but provided an alternate rationale for doing so, the other crimes evidence was relevant to prove his intent to sexually assault the victim. *Id.* at 326.

¶ 33    To the extent that *Luczak* and *Fretch* hold that a defendant's mere presence with the victim at the time of the incident is sufficient to put his intent at issue, we disagree. Instead, we hold, in line with *Bobo* and *Cardamone*, that if a defendant denies the commission of the crime and does not offer any evidence or argument that his actions were or may have been accidental, incidental, or inadvertent, other acts evidence may not be admitted to prove intent, even if the defendant admits that he was present with the victim at the time of the alleged offense. See

14

*Cardamone*, 381 Ill. App. 3d at 490 ("[w]hen state of mind is not at issue because a defendant claims that the alleged events did not occur, admission of other-crimes evidence for purposes of establishing intent is inappropriate").

¶ 34    Other jurisdictions have reached the same conclusion. See, *e.g.*, *State v. J.M.*, 137 A.3d 490, 492, 498 (N.J. 2016) (finding "defendant's state of mind [was] not a 'genuinely contested' issue" and other-acts evidence was inadmissible to establish intent because defendant, who was charged with sexually assaulting a customer during a massage, did not argue that the alleged sexual assault was consensual or accidental but instead maintained that the assault never occurred (quoting *State v. Willis*, 137 A.3d 452, 460 (N.J. 2016))); *State v. Thoren*, 970 N.W.2d 611, 618, 630-31 (Iowa 2022) (concluding the court abused its discretion in allowing the State to use other acts evidence to prove intent where defendant "flat-out denied" ever touching the victim's vaginal area during a Reiki treatment session because the "disputed issue was whether the touching actually occurred," not the reason defendant touched the victim); *State v. Wells*, 221 P.3d 561, 570-71 (Kan. 2009) (finding that other acts evidence was inadmissible to prove defendant's intent where he admitted he was in the victim's room on the night in question but denied any sexual contact occurred, stating, "[w]hen a defendant wholly denies committing the alleged acts, admitting evidence of prior bad acts to prove intent is error"); *People v. Bagarozy*, 522 N.Y.S.2d 848, 849-50, 854 (N.Y. App. Div. 1987) (concluding that where the victims were present in defendant's apartment but defendant "consistently denied any sexual contact with his accusers" and "never offered an innocent explanation as to those specific acts," his "intent was never at issue"); *State v. Fonseca*, 681 S.E.2d 1, 2, 5 (S.C. Ct. App. 2009) (concluding that allowing other acts evidence to prove intent where victim was present at defendant's home but defendant "denie[d] that the contact ever occurred" would "undermine the protections of Rule

404"). Because Smart consistently denied any physical contact with J.P., his intent was not at issue; therefore, we find that the trial court abused its discretion when it admitted the other acts evidence here.

¶ 35     We next turn to the question of whether reversal is required. Smart argues that because this was a close case, the State's reliance on the other crimes evidence "to depict Smart as a serial sexual predator" was not harmless. The State conversely argues that even if this evidence was improperly admitted, any error was harmless because the court did not explicitly refer to it when it found Smart guilty.

¶ 36     While " '[t]he erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily calls for reversal' " (*People v. Harding*, 401 Ill. App. 3d 482, 490 (2010) (quoting *People v. Lindgren*, 79 Ill. 2d 129, 140 (1980))), the error will be deemed harmless if "the defendant is neither prejudiced nor denied a fair trial due to its admission." *People v. Bochenek*, 2020 IL App (2d) 170545, ¶ 67. "The State bears the burden of persuasion to prove beyond a reasonable doubt that the result would have been the same without the error." *People v. Quintero*, 394 Ill. App. 3d 716, 728 (2009). When "the outcome of a trial depends entirely on the credibility of an accuser and the defendant, no error should be permitted to intervene." *Bobo*, 278 Ill. App. 3d at 133.

¶ 37     This was a close case that turned on the credibility of Smart and J.P. The court's decision to acquit Smart of one of the three counts underscores this point. There was no physical evidence, there were no eyewitnesses, and the court acknowledged that the State's case hinged on J.P.'s testimony because "he was the only one actually present when the alleged incidents occurred." In addition, J.P. did not make an immediate outcry. The State relied heavily upon the other acts evidence to make its case. The prosecutor asked Smart and his brother about the June

12, 2018, incident, brought in stipulated testimony from Curry about it, and then used this other acts evidence to argue in closing that Smart "engaged in a pattern of abuse against boys, [that] culminated in him raping [J.P.]." Although the trial court did not reference the other acts evidence when announcing its verdict, we cannot presume that this evidence did not influence the trial court's credibility determinations and, ultimately, affect the outcome, because it expressly deemed this evidence admissible. See *People v. Hampton*, 96 Ill. App. 3d 728, 731 (1981) (" 'Where an objection has been made to the evidence and overruled, it cannot be presumed that the evidence did not enter into the court's consideration. The ruling itself indicates that the court thought the evidence proper.' " (quoting *People v. De Groot*, 108 Ill. App. 2d 1, 11 (1968))); see also *People v. Naylor*, 229 Ill. 2d 584, 605 (2008) (finding it "must conclude that the trial court improperly considered th[e] incompetent evidence" after the judge in a bench trial erroneously admitted defendant's prior conviction). We find that the State cannot meet its burden to prove beyond a reasonable doubt that the result would have been the same without the improperly admitted evidence. See *People v. Foreman*, 2019 IL App (3d) 160334, ¶ 31 (the improper admission of other-crimes evidence carries a high risk of prejudice and "will ordinarily require a reversal" (citing *People v. Cortes*, 181 Ill. 2d 249, 285 (1998))); *People v. Piatkowski*, 225 Ill. 2d 551, 566 (2007) ("When error occurs in a close case, we will opt to 'err on the side of fairness, so as not to convict an innocent person.' " (quoting *People v. Herron*, 215 Ill. 2d 167, 193 (2005))). Therefore, we find that reversal and remand for a new trial is required.

¶ 38    Given our disposition, we need not reach Smart's ineffective assistance of counsel claim.

¶ 39                                    III. CONCLUSION

¶ 40    For the foregoing reasons, the judgment of the trial court is reversed and remanded for a new trial.

¶ 41    Reversed and remanded.

---

*People v. Smart*, **2023 IL App (1st) 220427**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CR-14458; the Hon. Carol M. Howard, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Kathleen M. Flynn, and Kara Kurland, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Mary L. Boland, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |

---