2021 IL App (1st) 181279-U

THIRD DIVISION
March 31, 2021

No. 1-18-1279

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 15 CR 17032 |
| DELRICO COX, | ) ) | Honorable Maura Slattery Boyle, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Burke concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) No plain error occurred, nor was trial counsel ineffective, in the admission of the victim's prior consistent statements; and (2) the trial court erred in allowing the admission of other crimes evidence, but the error was harmless where the court indicated it did not consider the evidence in its guilty finding.

¶ 2     Following a bench trial, defendant Delrico Cox was convicted of indecent solicitation of a child and subsequently was sentenced to a term of five years in the Illinois Department of Corrections. On appeal, defendant argues that he was denied a fair trial because: (1) the State elicited improper prior consistent statements from the minor victim J.W., and (2) the introduction

of other crimes evidence failed to comply with section 115-7.3 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115-7.3 (West 2016)) and lacked probative value.

¶ 3     In October 2015, defendant was charged by indictment with the following four offenses. Count one alleged that defendant committed the offense of aggravated criminal sexual abuse when he touched his hand to J.W.'s sex organ for the purpose of sexual gratification and J.W. was under 18 years of age and defendant was a family member, *i.e.*, her stepfather, in violation of section 11-1.60(b) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-1.60(b) (West 2014)). Count two alleged the same conduct by defendant and that he was 17 years of age or older and J.W. was under 13 years of age in violation of section 1.60(c)(1) of the Criminal Code (720 ILCS 5/11-1.60(c)(1) (West 2014)). Count three alleged that defendant committed the offense of attempt aggravated criminal sexual abuse of a family member under 18 years of age when he, with the intent to commit the offense of aggravated criminal sexual abuse, knowingly attempted an act of sexual conduct upon J.W. when he asked J.W. if he "could rub multiple parts of her body, had J.W. rub lotion on his body, and indicated he wanted J.W. to sit on his penis" for the purpose of sexual arousal or gratification and J.W. was under 18 years of age and defendant was a family member, *i.e.*, her stepfather, in violation of section 8-4 of the Criminal Code (720 ILCS 5/8-4 (West 2014)). Count four alleged that defendant committed the offense of indecent solicitation of a child when he was 17 years of age or older and with the intent that the offense of aggravated criminal sexual abuse be committed, he knowingly solicited J.W., a child or one whom defendant believed to be a child, to perform an act of sexual conduct, with contact between J.W.'s buttock and defendant's penis, for the purpose of the sexual gratification or arousal of defendant or J.W. in violation of section 11-6(a) of the Criminal Code (720 ILCS 5/11-6(a) (West 2014)).

¶ 4    Prior to trial, the State filed a motion to allow evidence of other crimes. In the motion, the State sought to introduce evidence related to another uncharged allegation of aggravated criminal sexual abuse involving a minor, T.R. According to the State's motion, in December 2008, T.R. was 13 years old and the niece of defendant's girlfriend. Defendant was driving her to school from her grandmother's house. Defendant told her that he needed to charge his cell phone and turned into a motel. He checked into the motel and while there, he committed sex acts with T.R., including rubbing T.R. over her clothing, touching her buttocks and breasts, as well as removing his penis from his pants and placing T.R.'s hand on his penis and having her rub his penis until he ejaculated. The State asked to introduce the evidence to prove motive, intent, identity, knowledge, and absence of mistake as well as propensity under section 115-7.3 of the Code (725 ILCS 5/115-7.3 (West 2016)). In his response, defendant asked for this evidence to be excluded on several grounds, including proximity in time and degree of similarity in the offenses. Following arguments, the trial court allowed the admission of the evidence based on the similarity of the acts and found the evidence to be more probative than prejudicial.

¶ 5    Defendant waived his right to a jury trial and proceeded to a bench trial in March 2018. At the start of the proceedings, the State informed the trial court that T.R. was "not cooperating" and had not appeared in court. The prosecutor asked for leave to admit defendant's statement to Chicago police when he was arrested in that case. Over defendant's objection, the court allowed the State to present the testimony regarding the other crime incident. The State then called its first witness.

¶ 6    J.W. testified that she was born on March 15, 2000, and at the time of the trial she was 17. She primarily lived with her father while growing up. Her mother, Shauna Cox, was married to defendant. She identified defendant in court.

¶ 7    When J.W. was 8 or 9 years old, she lived with her grandmother near West 65th Street and South Marshfield Avenue in Chicago. Her mother was living in an apartment with defendant and a sibling. J.W. would occasionally visit their apartment. During one of those visits, her mother had a headache and went to lay down while defendant was going to take J.W. to her grandmother's house. When they went into the hallway, defendant touched J.W.'s vagina over her clothes. She explained that defendant "cupped" her vagina. Defendant did not say anything to her. J.W. felt "scared" and did not know what to do. Afterward, defendant then drove her to her grandmother's house. J.W. did not tell anyone about what happened because she was scared and she kept it to herself. J.W. did not spend as much time with her mother as before this incident, and she then spent more time with her grandmother.

¶ 8    When J.W. was in eighth grade, she stayed the night at a different apartment shared by her mother and defendant. J.W. spent the night on the couch. In the morning, her mother told J.W. that she could sleep in the mother's bed. J.W. went to sleep in the bed alone while her mother went to work at Walmart. She was later woken up by defendant in the bed. She felt someone rubbing her feet and saw defendant was "massaging" her feet. Defendant was lying opposite her on the bed with his head near her feet. J.W. felt "weirded out" and "scared." She then got out of the bed and went to another room to sleep. She later told her grandmother what happened on this occasion and about the prior occasion. J.W. asked her grandmother not to tell anyone because she was "scared." J.W. did not tell anyone else because she did not want to "share it with anybody" because it was a "sensitive subject." Her grandmother has since passed away.

¶ 9    Later in 2015, when J.W. was 15 years old, J.W.'s mother and defendant had a new baby. J.W. helped to care for the baby by babysitting, changing diapers, and giving the baby her bottle.

Her mother was still working at Walmart and she worked often. J.W. stayed for one or two weeks at her mother's home, including sleeping and keeping clothes there. J.W. would babysit the baby while her mother was at work and defendant was "in and out." One day, J.W. took a shower and when she exited into the hallway in a towel, defendant was "staring" and asked if he could "oil [her] down." She said no and continued to one of her sibling's rooms to get dressed. She felt "a lot of emotions" and was "scared and confused" by defendant's conduct. J.W. testified that she did not know why she did not say anything at the time.

¶ 10    A couple weeks later, J.W. was sitting on the couch with defendant. She was looking at her phone when defendant asked for a kiss and asked her if she thought it was right. She told him no and that she did not think it was right. She again felt scared and confused.

¶ 11    Later in the summer, J.W. was in a downstairs bedroom with the baby. Defendant came into the room without a shirt on and asked her to rub lotion on his back. J.W. "just did it" because she did not want to say no. He then asked her to put lotion on his stomach, but she said no because she was "uncomfortable." Defendant then pointed towards his penis and asked her to get on top of him. J.W. said no and she felt "scared." She then left the room and went to the bathroom. When she came out of the bathroom, defendant and the baby were still in the bedroom. Defendant was still shirtless. He then asked to rub her feet or to put lotion on him. J.W. told him no. Defendant then offered her $5, but she continued to refuse because she did not want him to touch her feet. J.W. did not let defendant touch her feet. Eventually defendant left the room.

¶ 12    J.W. testified that she did not tell anyone right away because she did not want to be feel "exposed or embarrassed" to say what happened. She did not know why she did not tell anyone. Approximately two weeks later, she told her father and uncles what happened with defendant.

¶ 13 During a conversation with her dad and uncles, they asked her what was going on and she "eventually just said it." J.W. said all of her emotions came out and she "let it be known." She "let it out" because she had "so many emotions" going through her head. J.W. admitted that the conversation began when she was asked about being in the park with a boy. Her father was not aware she had a boyfriend because he did not approve of her dating. Later her mother came to the house and J.W. told her what happened. They went to J.W.'s mother house and contacted the police. When the police arrived at the house, J.W. spoke with them about what happened and she later spoke with detectives.

¶ 14 Following her report of what occurred, J.W.'s mother was supportive and "act[ed] like she believed" J.W., but later J.W. "barely" had any contact with her mother. She denied that she heard a discussion at either school or church community events about "bad touches" or to be careful about people touching in bad sexual ways. She also denied talking with family about this topic.

¶ 15 Detective Moreen Hanrahan of the Chicago police department testified that in September 2015, she was assigned to the investigation of sexual abuse involving J.W. She took over the case from Detective James Evans, who had already spoken to J.W. She interviewed defendant after he turned himself in to the police and identified defendant in open court.

¶ 16 During the interview, defendant told her that he was J.W.'s stepfather. He had been in a relationship with her mother since 2008 and they married in 2012. He said J.W. started to come over to their house more often in 2011. In response to the allegations, defendant told her that he played a "rub lotion game with all of his kids." He has the children rub his feet and he would rub lotion on their feet. About a month prior, he had asked J.W. if she would rub lotion on his feet. He also asked her to rub lotion on his back, which she did.

¶ 17    Detective Granadon[1], a Chicago police detective, was assigned in 2008 to an investigation involving the sexual abuse of T.R. in which defendant was named as the offender. T.R. referred to defendant as her uncle and he was her aunt's boyfriend. The detective identified defendant in court. Defendant gave a statement to the detective regarding T.R.'s allegations.

¶ 18    Defendant would take T.R. to school sometimes. T.R. was 13 years old at the time of the incident. On the day of the incident, he was driving T.R. to school, but she told him that she did not want to go to school. He then went shopping with her and drove to a motel to charge his phone. He registered at the motel and went into the room. About 10 to 15 minutes later, T.R. knocked on the door and he let her into the room. Defendant told the detective that T.R. turned on the television. Defendant then left the room to make a cell phone call and when he returned, T.R. had pornography playing on the television. Defendant denied doing anything to T.R.

¶ 19    After the State rested, defendant moved for a directed finding, which the trial court denied.

¶ 20    Shauna Cox testified for the defense. She stated that she is J.W.'s mother and has been married to defendant since 2012. She identified defendant in court. She has five children, including three with defendant. J.W. has never resided with Cox, but has lived with her father and her grandmother. J.W. would visit on occasion. Cox began living with defendant at the end of 2009.

¶ 21    According to Cox, J.W. would visit once every two weeks. Sometimes J.W. would call and ask to visit. Cox denied that J.W. would ever come over when she was not home. She would not let J.W. visit when Cox was at work. When her youngest child was born, J.W. came over to help, but it was when Cox was not working. Cox worked at Walmart and took a leave for about a

_____

[1] Detective Granadon did not give his first name during his testimony.

month. She could not recall if she was ever called into Walmart for an emergency while J.W. was staying at her house. Cox denied that J.W. was ever alone with defendant and she stated that J.W. would not be in the house without Cox or J.W.'s siblings. Cox denied that J.W. ever complained that defendant had touched her inappropriately or asked her to sit on his penis.

¶ 22    Cox communicated regularly with J.W. In 2015, Cox learned that J.W. might have a boyfriend and she found out from people in the neighborhood that J.W. might have been spending time with the boy in the park. She then told J.W.'s father this information. As a result, J.W. got in trouble with her father and had her phone taken away. Cox had J.W.'s phone and saw that J.W. was still talking to the boy after she had been told that she was not allowed. Cox then told J.W.'s father who came over and "popped her" on the head and took her home.

¶ 23    Cox testified that her family would use lotion and that the children would put lotion on defendant's feet. This would occur in her bedroom because her room is "the hangout room." J.W. would observe others putting lotion on defendant's feet. Cox described defendant's feet as "really bad dry feet." According to Cox, there was an incident in which her two older children with defendant were putting lotion on defendant's feet. J.W. walked into the room and said she would put lotion on defendant's feet for $5. Cox denied that defendant asked J.W. to put lotion on his feet or any other part of his body. Cox gave J.W. the $5 because J.W. did things around the house for extra money. She denied that rubbing lotion on defendant was described as a game.

¶ 24    Cox discussed people touching in bad places with her daughters, including J.W., on many occasions. Cox had these discussions because she had been raped when she was younger. She started having these conversations with J.W. when she around five or six years old. She would have these conversations when J.W. was getting in or out of the bathtub. She would ask J.W. if anyone every touched her "pocketbook," which was the family term for the vaginal area. J.W.

8

never reported any inappropriate touches by anyone. Specifically, J.W. did not indicate that defendant had touched her inappropriately nor did she show any fear of defendant. Cox previously had a good relationship with her daughter J.W., but at the time of trial, she no longer had the same relationship. Cox stated that J.W. was planning to move in with her after J.W.'s grandmother died. Cox denied being told by J.W. of what happened in August 2015. Cox stated that she was present when J.W.'s family came to Cox's house to make a police report.

¶ 25    The defense rested after Cox's testimony. In rebuttal, the State recalled Detective Hanrahan. The detective testified that defendant described the rub lotion activity as a game that he played with his family and his wife. Defendant also told her that the incident in which he asked J.W. to rub lotion on his back occurred while Cox was at work. The State then rested in rebuttal.

¶ 26    Following closing arguments, the trial court took the case under advisement. Later in March 2018, the trial court entered its guilty finding on the record. The court found defendant not guilty of both counts of aggravated criminal sexual abuse as well as the attempted aggravated criminal sexual abuse count, but found defendant guilty of indecent solicitation of a child. In April 2018, defendant filed a motion for a new trial, which the trial court subsequently denied. The trial court sentenced defendant to five years in the Illinois Department of Corrections.

¶ 27    This appeal followed.

¶ 28    Defendant first argues that he was denied a fair trial because the trial court improperly allowed the introduction of J.W.'s prior consistent statements. According to defendant, J.W. was improperly permitted to testify that she told her father and uncles about the incident with defendant and that she later told police what had occurred. The State responds that while the

testimony was "likely improper," any error was not prejudicial because the trial court did not rely on this testimony in its guilty finding.

¶ 29    Defendant admits that no objection was made to this testimony during trial, nor was this claim raised in his motion for a new trial. To preserve an issue for review, defendant must object both at trial and in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Failure to do so operates as a forfeiture as to that issue on appeal. *People v. Ward*, 154 Ill. 2d 272, 293 (1992). However, defendant asks this court to review the issue under the plain error doctrine or, in the alternative, ineffective assistance of trial counsel.

¶ 30    Supreme Court Rule 615(a) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The plain error rule "allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)). However, the plain error rule "is not 'a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court.' " *Herron*, 215 Ill. 2d at 177 (quoting *People v. Precup*, 73 Ill. 2d 7, 16 (1978)). Rather, the supreme court has held that the plain error rule is a narrow and limited exception to the general rules of forfeiture. *Id.*

¶ 31    Defendant carries the burden of persuasion under both prongs of the plain error rule.

10

*People v. Lewis*, 234 Ill. 2d 32, 43 (2009). Defendant asserts that the improper admission of J.W.'s prior consistent statements qualify as a plain error under both prongs. However, "[t]he initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error at trial." *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 32    As a general rule, proof of a prior consistent statement made by a witness is inadmissible hearsay and may not be used to bolster a witness's testimony. *People v. Denis*, 2018 IL App (1st) 151892, ¶ 79. The reasoning behind this rule is that " 'a jury is likely to attach disproportionate significance to them. People tend to believe that which is repeated most often, regardless of its intrinsic merit, and repetition lends credibility to testimony that it might not otherwise deserve.' " *People v. Johnson*, 2012 IL App (1st) 091730, ¶ 60 (quoting *People v. Smith*, 139 Ill. App. 3d 21, 33 (1985)). The prejudicial nature of evidence of prior consistent statements is judged on a case-by-case basis. *People v. Caffey*, 205 Ill. 2d 52, 110 (2001). "These evidentiary rulings are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *Id.* Further, "when a trial court is the trier of fact a reviewing court presumes that the trial court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion." *People v. Naylor*, 229 Ill. 2d 584, 603 (2008). This presumption may be rebutted if the record on appeal "affirmatively shows the contrary." *Id.* at 603-04.

¶ 33    Two exceptions exist to the admissibility of prior consistent statements: (1) when it is suggested that the witness had recently fabricated the testimony or had a motive to testify falsely, and the prior statement was made before the motive to fabricate arose; and (2) when the out-of-court statement is for identification. *People v. Tisdel*, 201 Ill. 2d 210, 217 (2002). Defendant asserts that neither exception is applicable in this case.

¶ 34    Here, defendant bases his argument on J.W.'s testimony that she told her father and

uncles and later the police "what happened." After the 2015 incident with defendant involving the lotion, the prosecutor asked J.W. if it was correct that she did not tell anyone. J.W. responded that "after a while" she "ended up telling" her dad and her uncles. She estimated she told them two weeks later. The prosecutor asked J.W. to "tell us about the conversation that you had with your dad and your uncles." J.W. responded:

> "So they were, like, asking me what was going on with me. And I eventually just said it. Like, because they were asking me what's going on and all my emotions came out and I just -- I let it be known."

¶ 35 The prosecutor asked if it was correct that J.W. told her father what happened, and she answered, "Yes." The prosecutor then asked J.W. if she told her mother "what happened," she answered, "Yes." The prosecutor also questioned J.W. about contacting the police and making a police report. The prosecutor then asked, "And you told [the police] what happened," and J.W. responded, "Yes." The prosecutor also asked her if she later told detectives "what had happened," and J.W. answered, "Yes."

¶ 36 We agree with defendant that neither exception applies here. There was no testimony suggesting that J.W. had recently fabricated her testimony, nor was identification an issue. According to defendant, this testimony constituted inadmissible prior consistent statements and was improper. The State maintains that the testimony was not used to bolster J.W.'s credibility, but rather to establish a timeline of events. However, even if we assume this testimony was admitted in error, defendant has not shown how this testimony so affected his trial as to constitute plain error.

¶ 37 Although defendant has asserted plain error under both prongs, the supreme court has already foreclosed a claim of prior consistent statements as implicating a substantial right under

the second prong. *People v. Keene*, 169 Ill. 2d 1, 18 (1995). Accordingly, defendant's challenge under the second prong lacks merit. Under the first prong, defendant has the burden to show that the evidence was so closely balanced that the error in admitting the prior consistent statements alone threatened to tip the scales of justice against him. See *Piatkowski*, 225 Ill. 2d at 565. Moreover, as previously stated, we presume the trial court in a bench trial only considered admissible evidence and disregarded any improper evidence. *Naylor*, 229 Ill. 2d at 603.

¶ 38    Several factors may minimize the prejudicial effect of a prior consistent statement, such that it will not constitute plain error. For example, when the evidence of a prior consistent statement is provided by the witness herself, her credibility is not truly enhanced, because she is merely corroborating herself. *People v. Henderson*, 142 Ill. 2d 258, 311 (1990), *not followed on other grounds by People v. Terry*, 183 Ill. 2d 298, 304-05 (1998). In addition, prejudice is minimized when the testimony is general instead of specific and no portion of the actual statement is admitted into evidence. *Id.* at 312. Both factors are applicable here.

¶ 39    First, J.W. testified about what occurred with defendant and then merely confirmed that she told her father and uncles, her mother, and police officers. Second, the substance of what she told any of these individuals was never offered. The extent of this testimony was in response to general questions asking if J.W. told the respective party "what happened." At no time did J.W. detail what she told either of her parents or the police. Nor did any of those individuals testify at trial about what J.W. recounted to them.

¶ 40    Significantly, and contrary to defendant's contention, the trial court did not rely on J.W.'s testimony regarding her statements to either of her parents or the police in its findings. While the court noted J.W.'s initial outcry in its general recitation of the trial testimony, the court explicitly based its guilty finding on defendant's own statement to the police that corroborated J.W.'s

testimony regarding his request to have her rub lotion on his feet. The trial court specifically found as follows.

> "The question is she testified in regards to something, you validated it, and you validated it even further by indicating this occurred when [Cox] wasn't home.
>
> ***
>
> What I find is, in regards to the allegation of aggravated criminal sexual abuse, the first three counts, [there] is a finding of not guilty, but in regards to the charge of indecent solicitation of a child, based on [J.W.'s] testimony and the corroborating evidence of the testimonies of the individuals, [there] is a finding of guilty on that charge."

¶ 41 The trial court further found the testimony of Cox, J.W.'s mother, "lacking some veracity" and observed that defendant's statement to the police directly contradicted Cox's testimony. At the hearing on defendant's posttrial motion, the court further found that Cox "did not successfully rebut [J.W.'s] testimony at all." The court again observed that J.W. stated this incident occurred while she was home alone with defendant despite Cox's testimony that she never left J.W. home alone, while defendant's statement indicated that "this incident occurred while his wife was at work."

¶ 42 As illustrated by the trial court's findings, this case did not rest entirely on J.W.'s credibility. Defendant ignores the fact that the court found him not guilty of the more serious offenses of aggravated criminal sexual abuse and attempted aggravated criminal sexual abuse because the State failed to prove those charges beyond a reasonable doubt. This court is only considering the conviction for indecent solicitation of a child, and we do not find that the evidence of this offense was closely balanced.

¶ 43     A person age 17 or over commits the offense of indecent solicitation of a child "if the person, with the intent that the offense of *** aggravated criminal sexual abuse be committed, knowingly solicits a child or one whom he or she believes to be a child to perform an act of sexual penetration or sexual conduct ***." 720 ILCS 5/11-6(a) (West 2014). In addition to J.W.'s testimony describing defendant's request for her to rub lotion on his feet for $5 and asking her to sit on his penis, defendant corroborated a significant portion of J.W.'s allegations to the police. According to Detective Hanrahan, defendant told her that he engaged in a "rub lotion game" and specifically, that he asked J.W. to rub lotion on his feet while Cox, his wife and J.W.'s mother, was not at home. These were the corroborating statements by defendant which the trial judge found supported and then resulted in the guilty finding on the single charge of indecent solicitation of a child. The burden is on defendant to show that the evidence was so closely balanced that the error in admitting J.W.'s prior consistent statements tipped the scales of justice against him, and he has failed to do so. Nothing in the trial court's findings suggests that J.W.'s brief testimony in which she affirmed that she told her father and uncles, and later two sets of police officers what happened with defendant impacted the guilty finding. Since defendant cannot show that J.W.'s testimony contributed to his conviction, he has failed to establish plain error.

¶ 44     Similarly, defendant's claim of ineffective assistance of trial counsel for failing to object to J.W.'s testimony regarding prior consistent statements fails. Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court delineated a two-part test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment. Under *Strickland*, a defendant must demonstrate that counsel's performance was

15

deficient and that such deficient performance substantially prejudiced defendant. *Strickland*, 466 U.S. at 687. To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "If a case may be disposed of on the ground of lack of sufficient prejudice, that course should be taken, and the court need not ever consider the quality of the attorney's performance. Strickland, 466 U.S. at 697. *Strickland* requires actual prejudice be shown, not mere speculation as to prejudice." *People v. Bew*, 228 Ill. 2d 122, 135 (2008).

¶ 45    Defendant has failed to satisfy the *Strickland* test. Defense counsel's performance was not deficient where counsel's strategy was to use the timing of J.W.'s outcry to suggest that she was not credible. During cross examination, he asked J.W. about the conversation about the boy in the park that occurred just before she told her father and uncle about defendant's actions. Counsel also noted in his questions that J.W. did not tell her dad, her uncle, her grandma, or any cousins after the first incident with defendant. Later, counsel argued during his closing arguments that J.W. failed to report the incidents with defendant despite the opportunity and a supportive family, but she "volunteered it" after "she got caught with a boy." Counsel further argued that J.W. "retaliated by pushing it off against her mother's husband." This was a valid trial strategy to suggest the timing of J.W.'s outcry was suspect. Moreover, under the invited error rule, "a party cannot complain of error that it brought about or participated in." *People v. Hughes*, 2015 IL 117242, ¶ 33. Here, counsel used the timing of J.W.'s reporting as part of his

trial strategy and this argument does not support a claim of deficient performance.

¶ 46    Further, under the prejudice prong, defendant has not shown that absent counsel's alleged error, the result of the proceeding would have been different. As discussed above, the trial court based its findings on defendant's statement to police that corroborated portions of J.W.'s testimony. There is nothing in the court's findings to suggest that absent J.W.'s testimony regarding her reporting what happened to other people, defendant would have been found not guilty of indecent solicitation of a child. Accordingly, defendant's claim of ineffective assistance fails.

¶ 47    Next, defendant contends that the trial court abused its discretion in allowing other crimes evidence to be admitted at trial. Specifically, defendant asserts that trial court erred in allowing Detective Granadon to testify over defendant's objection about defendant's statement in an uncharged sexual abuse case. The State maintains that the evidence was properly admitted, and the trial court did not abuse its discretion in finding that the probative value of this evidence outweighed the potential prejudice.

¶ 48    In its motion to admit other crimes evidence, the State sought to admit evidence related to the prior investigation involving T.R. under two methods. First, the State argued that the evidence was admissible under section 115-7.3 to show defendant's propensity. And second, the State asked to admit the evidence under the common law rule to prove motive, intent, identity, knowledge, and absence of mistake. The State contended that both the proximity in time and the similarity of the offenses supported its admission.

¶ 49    Generally, evidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit crimes. *People v. Wilson*, 214 Ill. 2d 127, 135 (2005). Other crimes evidence is admissible to show *modus operandi*, intent, identity, motive, or

absence of mistake. *Id.* at 136. "Other-crimes evidence may also be permissibly used to show, by similar acts or incidents, that the act in question was not performed inadvertently, accidently, involuntarily, or without guilty knowledge." *Id.* at 136. "Where such other-crimes evidence is offered, it is admissible so long as it bears some threshold similarity to the crime charged." *Id.*

¶ 50    Additionally, section 115-7.3 of the Code provides an exception to the general rule and permits the introduction of certain evidence in cases where defendant is accused of certain enumerated offenses including aggravated criminal sexual abuse. 725 ILCS 5/115-7.3(a)(1) (West 2016). Under section 115-7.3(b), evidence of prior acts may be admissible and "may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.3(b) (West 2016). In determining whether the probative value of the evidence outweighs the undue prejudice that could result from the introduction of the evidence, the trial court may consider: (1) the proximity in time to the charged offense, (2) the degree of factual similarity between the charged offense, and (3) any other relevant facts and circumstances. 725 ILCS 5/115-7.3(c) (West 2016). "[T]he State does not need to prove defendant's involvement in other crimes beyond a reasonable doubt but instead such proof must be 'more than a mere suspicion.' " *People v. Johnson*, 2020 IL App (1st) 162332, ¶ 52 (quoting *People v. Thingvold*, 145 Ill. 2d 441, 456 (1991)). The trial court should engage in a "meaningful assessment of the probative value versus the prejudicial impact of the evidence" before admitting other crimes evidence to show propensity. *People v. Donoho*, 204 Ill. 2d 159, 186 (2003).

¶ 51    Since defendant was charged with aggravated criminal sexual abuse, section 115-7.3 was applicable, and evidence of prior acts were admissible if the court found the evidence to be more probative than prejudicial. Thus, the fact that the trial court ultimately found defendant not guilty of the applicable charges does not impact the admissibility of the evidence under this section.

The admissibility of other crimes evidence rests within the sound discretion of the trial court, and we will not disturb the court's decision absent a clear abuse of discretion. *Wilson*, 214 Ill. 2d at 136. An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable or when no reasonable person would take the position adopted by the trial court. *Donoho*, 204 Ill. 2d at 182.

¶ 52    According to defendant, Detective Granadon's testimony about defendant's statement from the uncharged offense was improperly admitted for three reasons: (1) defendant's statement was not admissible under section 115-7.3(a) since defendant denied any wrongdoing to the police; (2) defendant's statement does not fall within the type of admissible evidence listed under section 115-7.3(e), and (3) the prejudicial effect outweighed the probative value based on the proximity in time and lack of similarity in allegations. While defendant did challenge the admission of other crimes evidence in the motion *in limine* and in his motion for a new trial, defendant failed to argue that his statement denying the allegations did not fall within section 115-7.3, nor did he argue that his statement was not the type of admissible evidence under section 115-7.3(e).

¶ 53    Before the trial court, defendant only raised the following arguments to exclude this evidence: proximity in time between the two incidents, the lack of similarity in the allegations, the evidence was not admissible under the grounds of intent, motive, *modus operandi*, common scheme, plan, identity, mistake or accident, and the detective's testimony was "subject to hearsay issues." Accordingly, defendant has raised the arguments challenging the evidence under sections 115-7.3(a) and (e) for the first time on appeal. The supreme court has held that a specific objection waives all other unspecified grounds. *People v. Cuadrado*, 214 Ill. 2d 79, 89 (2005) (citing *People v. O'Neal,* 104 Ill. 2d 399, 407 (1984)). A defendant's failure to object at trial robs

the trial court of the opportunity to correct the error, and his failure to object in a posttrial motion deprives this court of the factual findings that the trial court might have made concerning the effect of the alleged error on the weight of the evidence against defendant as well as the potential impact of the error." *People v. Anaya*, 2017 IL App (1st) 150074, ¶ 50. Since defendant failed to offer a specific objection or argument on these grounds in the trial court, these arguments have been forfeited on appeal.

¶ 54    We turn to the preserved arguments presented to the trial court. Defendant contends that Detective Granadon's testimony regarding defendant's statement in the 2008 incident "lacked any meaningful probative value" because defendant denied any wrongdoing in the statement which prevented the trial court from considering its probative value.

¶ 55    In this case, the State filed a motion *in limine* prior to trial seeking to introduce evidence of defendant's prior acts related to an uncharged allegation of sexual abuse from 2008. At a hearing, defendant argued that the events were too remote in time since seven years had passed between that allegation and the charged offense and that the allegations in that case were too dissimilar to the allegations involving J.W. After considering the parties' arguments, the trial court granted the State's motion and allowed the introduction of this evidence. The court observed that "the statute does not, nor does caselaw indicate that there's any type of bright red line indicating it must occur within 5 years of said alleged offense, in order for it to be admitted." The court also considered the similarity of the allegations related to the proximity of the child to defendant existed due to a relationship between defendant and the relatives of these minors. The court concluded that "though the specific acts may be a little different," they were similar enough to find that they were more probative than prejudicial.

¶ 56    At trial, the alleged victim T.R. was not cooperative with the State, and thus, unavailable

as a witness. The State then asked to present the other crimes evidence of defendant's statement through the testimony of Detective Granadon. Defendant objected to this evidence. The State argued that defendant's statement was relevant under the reasons set forth in its motion *in limine*. The trial court held that the evidence was admissible "pursuant to statute as well as case law." The court noted that it would "weigh the circumstances under which the evidence is received regarding the witness in that other case, alleged victim, and taking all of that information will weigh all of it together."

¶ 57    Detective Granadon testified regarding the statement defendant provided to police during an investigation into the 2008 allegations. According to the detective, defendant denied any wrongdoing and explained his relationship to T.R. Defendant would take T.R. to school sometimes. T.R. was 13 years old at the time of the incident. On the day of the incident, he was driving T.R. to school, but she told him that she did not want to go to school. He then went shopping with her and drove to a motel to charge his cell phone. He registered at the motel and went into the room. About 10 to 15 minutes later, T.R. knocked on the door and he let her into the room. Defendant told the detective that T.R. turned on the television. Defendant then left the room to make a cell phone call and when he returned, T.R. had pornography playing on the television.

¶ 58    We find that while the trial court properly granted the State's motion to admit other crimes evidence based on T.R.'s testimony, the admission of Detective Granadon's testimony as other crimes evidence was error. When T.R. failed to appear at trial, the State sought to admit defendant's statement through Detective Granadon's testimony. The admission of the detective's testimony was error because it lacked relevance and was counter to the *corpus delicti* rule because the statement alone was insufficient to establish that a crime had been committed.

21

The *corpus delicti* of an offense cannot be proven by a defendant's admission, confession, or out-of-court statement alone. *People v. Lara*, 2012 IL 112370, ¶ 17. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Without T.R.'s testimony, defendant's statement never established that a crime was committed regarding the prior allegations of sexual abuse. Further, we find the prejudicial effect of admitting defendant's statement outweighed its probative value. There was no probative value for the other crimes evidence when T.R. failed to appear in court. We acknowledge that the trial court was not called upon to consider this evidence under this basis, but we nevertheless conclude that the admission was in error.

¶ 59     However, we further find that this error was harmless because the trial judge explicitly stated on the record that she did not consider the other crimes evidence in rendering her judgment. We find the decision in *People v. Fletcher*, 328 Ill. App. 3d 1062 (2002), to support our conclusion. There, the defendant was found guilty of aggravated criminal sexual assault case and during the bench trial, the trial court allowed evidence, over the defendant's objection, that the defendant had been administered a polygraph. The court allowed the evidence for a limited purpose because defendant was claiming his statement(s) about the offense were involuntary and that the defendant had changed his story. *Id.* at 1066-67. On appeal, the defendant asserted that the admission of the polygraph evidence was reversible error. *Id.* at 1073-74. However, the reviewing court pointed out that it is presumed that the trial court considers only competent evidence, as well as evidence introduced for a limited purpose for that purpose only, and this presumption is not overcome unless the record shows otherwise. *Id.* at 1075.  In affirming the conviction, the *Fletcher* court observed that the trial court stated that he would not consider the

polygraph evidence in reaching a judgment. *Id*. The reviewing court also found that because the record showed the court did not consider the polygraph evidence, any error in the improper introduction of evidence would be harmless error. *Id*.

¶ 60    Here, in denying defendant's motion for a new trial, the trial court explicitly stated that it did not consider the other crimes evidence in reaching its judgment.

> "The court did not rely on the proof of other crimes in rendering a verdict. The court took that as part of the evidence but also the testimony that the court heard from the victim as well as the detective. And [defendant's] wife, her testimony played a significant role in the rendering as well as the words of the defendant himself, plays a significant role in this court's ultimate determination of guilt."

Thus, we conclude that while the admission of Detective Granadon's testimony was error, the error was harmless because the court did not consider this evidence in rendering its judgment. Accordingly, the record fails to support any claim of prejudice and defendant's argument fails.

¶ 61    We also reject defendant's assertion that Detective Granadon's testimony constituted inadmissible testimonial hearsay and a violation of the confrontation clause of the sixth amendment. Hearsay is defined as testimony of an out-of-court statement offered to establish the truth of the matter asserted. *People v. Armstead*, 322 Ill. App. 3d 1, 11 (2001). The confrontation clause of the sixth amendment requires that, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amends. VI, XIV; see also Ill. Const. 1970, art. I, § 8.

¶ 62    The record shows that Detective Granadon did not testify about his interview with T.R. At the start of the detective's testimony, the prosecutor asked if in 2008 he was involved "in an investigation of sexual abuse involving a 13-year-old girl named" T.R., and Detective Granadon

answered, "Yes." He then testified that T.R. had identified defendant as the offender. The rest of his testimony related to the statement defendant provided during that investigation. No specific testimony about T.R.'s allegations was introduced. No hearsay testimony was admitted nor was there a violation of the confrontation clause where T.R.'s statement was not admitted at trial.

¶ 63    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 64    Affirmed.